IN THE MATTER OF THE UNITED STATES v. EIGHTY-FOUR
BOXES OF SUGAR, TUFTS AND CLARKE CLAIMANTS.

The claimants of eighty-four boxes of sugar, seized in the port of New Or-
leans, for an alleged breach of the revenue laws, and condemned as for-
feited to the United States for having been entered as brown instead of
white sugar, claimed an appeal from the district court of the United States
to the supreme court. The sugars, while under seizure, were appraised at
two thousand six hundred and two dollars and fifty-one cents; and after
condemnation they were sold for two thousand three hundred and thirty-
eight dollars and forty-eight cents; leaving, after deducting the expenses
and costs of sale, the sum of two thousand one hundred and fifty dollars and
six cents. The duties on the sugars, considering them as white or brown,
being deducted from the amount, reduced the net proceeds below two
thousand dollars, the amount upon which an appeal could be taken. Held,
that the value in controversy was the value of the property at the time
of the seizure, exclusive of the duties, and that the claimant had a right
to appeal to this court.

The statute under which these sugars were seized and condemned, is a high-
ly penal law, and should, in conformity with the rule on the subject, be
construed strictly. If either through accident or mistake the sugars were
entered by a different denomination from what their quality required, a
forfeiture is not incurred.

FROM the district court of the district of East Louisiana.

In the port of New Orleans, eighty-four boxes of sugar, im-
ported from Matanzas, were entered as *brown sugar*, and were
seized by the officers of the customs for having been so enter-
ed, the same being alleged to be *white sugar*, and therefore for-
feited to the United States; a libel was filed against the whole
importation, but afterwards a part of the cargo was released,
and the proceedings in the libel were against the remaining
eighty-four boxes. The whole parcel had consisted of one
hundred and fifty-five boxes, of which seventy-one were mark-
ed B, and eighty-four marked C. The seventy-one boxes re-
leased were marked C, and of the eighty-four remaining, se-
venty were marked B, and fourteen were marked C.

In the answer of the claimants, all fraudulent intention is
denied, and the character of the sugar, as entered, is asserted;

and the claimants also allege, that if the contrary shall be adjudged by the court, the just conclusion should be that a mistake has been committed, and not that a fraud was meditated.

The sugars while under seizure were appraised by two officers of the customs at two thousand six hundred and two dollars fifty-one cents. After their condemnation they were sold by the marshal of the United States at a public sale for two thousand three hundred and thirty-eight dollars forty-eight cents, leaving two thousand one hundred and fifty dollars six cents after deducting the costs and the charges attending the suit and sale. Upon the sugars whether *white* or *brown*, the duties amounted to a sum sufficient to reduce the net proceeds below two thousand dollars; considering the sugars as white sugars these proceeds would be one thousand three hundred and eighty-eight dollars thirty-six cents.

Testimony was taken as to the real nature and description of the sugars, all of which was set forth in the record of the proceedings in the district court, and which is particularly referred to in the opinion of this court. The district court condemned the sugars as forfeited to the United States, for having been entered under a false denomination; the entry stating them to have been brown sugars, and the court having adjudged them to have been white sugars.

The claimants prayed an appeal, which the district court refused to allow, taking the ground that the value of the property in dispute was not above two thousand dollars: and insisting, that to ascertain the value, the duties must be deducted from the amount of sales, which deduction would leave a sum much below two thousand dollars.

Upon this refusal, notice was given to the district judge and district attorney, of an application to this court for a mandamus, for the allowance of the appeal. And the case came before the court upon a motion for such a mandamus. The record in court being full, it was, to avoid delay, agreed that if this court shall consider that the case admits of an appeal, it may, on the present transcript, proceed to decide the merits of the cause.

[United States v. Eighty-four Boxes of Sugar.]

The case was argued by Mr Mayer, for the appellants; and by Mr Taney, attorney-general, for the United States.

For the appellants, Mr Mayer contended.

1. That the value of the property in suit, in reference to the right of appeal, is the amount of money into which it is convertible; and that the sales made in this case, are the best test of the value of the sugar, and decide the value of property in dispute to be above two thousand dollars; that in such a case, to learn the value, the court ought not to make any deduction for the amount of duties—a subject, as regards value, entirely collateral to the goods; the productive capacity of the goods to yield the amount for paying the duties, being, in itself, a part of their essential value.

On the merits, he contended:

1. That the testimony shows that the sugars ought to be considered brown.

2. That whether adjudged brown or white, there is no ground for forfeiture of the sugars; the testimony exhibiting justification for a belief that the sugars should be, or might be, denominated brown; and the court's opinion, if to the contrary, only settling a doubt, and at most establishing an error of judgment, and not a wilful deception.

That no presumption of fraudulent representation necessarily arises from showing a specification of an entry to be incorrect in regard to the commercial character or designation of an article, when that incident of the article is speculative, or may be variously interpreted, or when, at all events, as in this case, it is variously defined by the opinions and experience of commercial witnesses.

3. That the testimony of the custom house officers is incompetent; that it is inadmissible, at least as to declarations of Mr Tufts; and that, under any view, it is entitled to but little weight, since it must have been governed by the prepossessions which led them to seize the sugar, and comes in aid of their act of seizure

On the point of jurisdiction, Mr Mayer argued, that the value of the property in question, in reference to the right of

appeal, is commensurate with the party's interest, and is the amount of money into which the subject matter is convertible; that the sales made in this case, are the best test of the value of the sugar, and decide the value of property in dispute to be above two thousand dollars; that, to learn the value, the court ought not to make any deduction for the amount of duties, a subject, as regards value, entirely collateral to the goods; the *productive capacity* of the goods to yield the amount for *paying the duties themselves* being *in itself* a part of their essential value. The lien of the United States on imported goods for the duties gives the government no *property* in them, and does not impair in any degree the proprietary interest of the individual throughout the whole property. No lien would have such an effect in regard to the owner's interest; but the lien for duties is not one of as proprietary a character as the lien of mortgage, or a sailor's lien, or a judicial lien of any kind. The existence of the lien in no case extinguishes the *personal liability*. It does not in case of duties; because, no matter what may be the fate of the goods held for the duties, the personal liability continues.

A mortgagor may insure the vessel mortgaged, without specifying his interest as incumbered, and recover as owner. 2 Caines's Rep. 19; Caines's Ca. Er. 124; 1 Johns. Rep. 385. Even a mortgage of land is not in effect regarded as giving an interest in the land, even at law; but is looked on as a mere chattel interest. 11 Johns. Rep. 534; 15 Johns. Rep. 319. The utmost, in respect of the duty claim, to be pretended by the United States, is an interest in the proceeds of the goods liable to duty; but such an interest is not an interest in the property. In case of an insurance, an averment of interest in the property would not be sustained by proof of right to the proceeds. 11 Johns. Rep. 302.

Under the poor laws in England, property, though mortgaged, will support a claim of settlement at its full value, as if not mortgaged. 6 Term Rep. 755; 1 W. Bl. 598. A mortgagor of a ship cannot commit barratry, because deemed the owner. Marsh. Ins. 528. A mortgage of a ship is regarded as only a right by means of the ship to enforce payment of the mortgage debt. The mortgagor is liable for the ship's repairs, as if no mortgage were made. 1 H. Blac. 117; Abbott, 117.

[United States v. Eighty-four Boxes of Sugar.]

The question of duties was not involved in this case in the court below. The claim for the duties was not therefore to be recognized by the court. The pretensions of the United States in the case, were paramount to all ownership or claims of duties, as the government demanded the whole property, under the charge of *unlawful* importation. The obligation and the claim for duties are incidental only to *lawful* importation. It is therefore contradictory to the very nature of such a case as the present, to assume that the claim for amount of duties *can be judicially known or regarded* in it. But in the very question of duties the owner of the goods has an interest, and it may be a subject of judicial controversy; and what is the value of that interest but the amount of the duties? It is no answer to say that the property has been here condemned and sold; and that the claimant can be restored only to the amount of sales remaining after deducting for the duties. For the purposes of the appeal only, the *judgment* complained of, and not the acts done in *pursuance* of the erroneous judgment, is to be regarded. The appellate court can take notice of the execution of the erroneous judgment only after reversing the judgment, and to determine the mode of doing justice to the appellant on the reversal. The *consequences* of the judgment constitute the ground of the complaint against it, and cannot come in to sustain it. As regards the present question, the sugars are to be treated as in their original specific condition. It is a cause of *complaint* that they were *not allowed to remain* so; but were converted into money, *by adverse proceedings.* Suppose the importer had wished to use the merchandize himself, would it not be deemed to be of the value to him of the cost and the amount of duties? Or, suppose that he intended to *export* the property and receive the drawback; where in such case is the proprietary interest to the amount of duties of government in the merchandize? Are not these to be considered by the court as rights, and rights of property in the importer, respected by our revenue system? But the theory of the district court in this case would contravene all this privilege, on every fair inference to be drawn from its existence. It may also be said too, that in reference to sales of merchandize even for home consumption, the amount of the duties is

[United States v. Eighty-four Boxes of Sugar.]

part of its worth, *its value.* It has been decided that the importer is liable for duties, although another to whom he has sold the merchandize before entry has given bond and security for the duties. 1 Mason's Rep. 482. If the merchandize, while held at the custom house for duties, is destroyed, still the owner would be liable for the duties. Do not all these liabilities constitute an interest to the extent of the amount of duties involved in them? and, if so, that amount is part of the value of the property as concerns the owner of it.

*On the merits* it was contended, that in a proceeding of forfeiture like this, the rules of evidence applying to penal or criminal proceedings are to be observed; and that, accordingly, fraudulent intention must be proved. Unexplained discrepancy between the entry and the package may testify the sinister purpose; but still the court must be satisfied of that purpose having existed before it will condemn in a case of this description. 9 Wheat. 430. 3 Wheat. 232. 6 Wheat. 120. 2 Mason, 48. 12 Wheat. 480. 1 Paine, 129, 499.

Whether adjudged *brown* or *white,* there is no ground for forfeiture of the sugars, the testimony exhibiting justification for a belief that the sugars should, or might be, determined brown, and the court's opinion to the contrary only settling a doubt, and at most establishing an error of judgment, and not a wilful deception: no *presumption* of fraudulent representation necessarily arises from showing a specification of an entry to be incorrect in regard to the commercial character or designation of an article, when that incident of the article is speculative, or may be variously interpreted; or when, at all events, as in this case, it is variously defined by the opinions and experience of commercial witnesses.

Mr Taney, attorney-general, contended that the opinion of the district judge of Louisiana in condemning the sugars, and refusing the appeal, was correct.

Mr Justice M'LEAN delivered the opinion of the Court:

This case is brought before the court, by an application for a mandamus to be directed to the judge of the court of the United States for the district of Louisiana, requiring him to allow an appeal from the judgment of that court.

In their petition the claimants state, that the eighty-four boxes of sugar were consigned to them at New Orleans, and that on their arrival, they were libelled by the United States for an alleged breach of the revenue laws ; that the sugars were valued by the two custom house appraisers at two thousand six hundred and two dollars fifty-one cents ; that they were afterwards condemned and sold by the marshal at public sale, for two thousand three hundred and thirty-eight dollars forty-eight cents, leaving two thousand one hundred and fifty dollars six cents, after deducting the costs and charges of the sale.

From the judgment of condemnation the claimants prayed an appeal to the supreme court ; which was refused, on the ground that the value of the sugars, exclusive of duties, is less than two thousand dollars.

By consent of parties, if the claimants shall, in the judgment of this court, be entitled to an appeal, the merits of the case shall be considered as regularly before the court, for a final decision.

Whether the claimants were entitled to an appeal, is the first point to be considered.

The decision of this question depends on the amount in controversy. If it be less than two thousand dollars, the judgment of the district court was final, and cannot be revised by an appeal.

The judgment of condemnation was entered on the 9th of April 1831, and on the 28th of the same month, under the order of the court, the marshal sold the property.

On the 19th of April an appeal was prayed, and an order was made, that the district attorney should show cause on the 23d of the same month, why an appeal should not be granted.

In his opinion against the right of the claimants to an appeal, the district judge says, that " the supreme court has lately, in the case of Gordon v. Ogden, decided, that the defendant cannot support an appeal, from a judgment obtained against him in the court below for a less sum than two thousand dollars, because that judgment is the only matter in dispute " "In this case," the judge says, "the thing demanded on one side was the forfeiture of a specific quantity of sugar, and

on the other the restoration of the same article, the value of which did not amount to two thousand dollars." "There was no demand of duties, nor could such demand have been taken into consideration in the case then before the court. There was no contest about the duties."

It will be observed that at the time the judgment of condemnation was entered, and also when the appeal was prayed, the sugars remained in the hands of the proper officer. Suppose the judgment had been given for the restoration of the property, in what form should it have been entered? Could any part of the property have been detained for the payment of the duties? The duties were not then due, and could the court have directed them to be paid, by the sale of a part of the property?

A judgment in favour of the complainants in the district court should have directed the property to be restored to them, on the payment of the duties or securing them to be paid, according to law. This would have given to the claimants the whole amount of their property, as though no seizure of it had been made. Under the law, they were entitled to a credit for the payment of the duties, on the condition of giving bond and security.

Does it not thus appear, that the whole of the property was the amount in dispute, and would have gone into the possession of the claimants had the judgment of the court been in their favour? How then could it be said in the court below, that the duties must be deducted from the value of the sugars, as forming no part of the controversy; and that by such deduction the value of the property was reduced below the amount which entitles the claimants to an appeal?

If the claimants had given bond for the payment of the duties, and a judgment of restoration had been entered by the court, before any part of the duties became payable, should the court have directed them to be paid? Such an order, under such circumstances, would be oppressive and unjust.

The duties having been secured to the government, as the law requires, no wrongful act on the part of the officers of the government, could lessen the term of credit fixed by the law and stated in the bond. And if no bond had been given, be-

[United States v. Eighty-four Boxes of Sugar.]

cause of the seizure of the property or its restoration, the claimants would have been at least entitled to a credit for the unexpired time allowed by law for the payment of the duties, on their giving the requisite bond and security.

The case must stand before this court on the appeal, as it stood before the district court, at the time the appeal was prayed. No subsequent action of the court in the sale of the property can affect the question. Before this court, therefore, the case must stand, on the judgment of condemnation; and this, before the duties were payable by law. Was not the entire property, and consequently, its full value, in dispute between the parties at the time judgment was entered?

On the one side a condemnation of the property is claimed, on the ground that the revenue law has been violated; and on the other a restoration of the property is demanded. In this view, this court think the right of appeal from the judgment of the district court, was clear, as the value of the property in controversy exceeded two thousand dollars.

The next inquiry is, whether the sugars were entered for the payment of duties, under a false denomination, with a view to defraud the revenue.

The sugars were entered as *brown*, on which a duty of three cents per pound is paid; and the libellants contend, that they should have been entered as white, on which a duty of four cents per pound is paid. The quality of the sugars can only be ascertained by a reference to the proof in the case.

The witnesses differ in their opinion as to the quality of these sugars. Bertrand and Smelser, two of the custom house officers, say the sugars were white; and their testimony is corroborated by five other witnesses. But a still greater number of witnesses, embracing the largest importers of sugars at New Orleans, are of the opinion that the sugars were properly denominated brown, by the importers. Some of the boxes appeared to be whiter than others, but by far the greater number, as it would seem from a majority of the witnesses, were brown.

J. W. Zacharie says that he is engaged in the importation of Havana sugars, and that had he been ordered to purchase white sugar, he would not have purchased the sugars in question. That if he had entered these sugars as brown, for the

SUPREME COURT.

payment of duties, he would not have considered himself as practising a fraud on the government.

A. Fiske states, that he knew sugar of superior quality imported as brown sugar, and that it is very difficult beforehand for an importer to know how his sugar will be classed. He says, when the qualities of superior brown and inferior n׳ ; approximate, a very fair difference of opinion may exis᷍ ᴧs to the quality.

Mr Grant states, that he has had great experience in white Havana sugar, and after examining the samples of the sugars shown him, says that a majority of them a    brown, though there may be a few boxes of white. He would not purchase them as white, on an order for sugar of that quality.

A. R. Taylor and Joseph Cockayne state, substantially, the same facts as Mr Grant.

Mr Suarez says that a portion of the sugar shown him has been white, but being very old, it has become worse than brown, and that he would not purchase it as white sugar. He considers the entire lot brown.

J. H. Shepherd states substantially the same facts. It appears that the planters in Havana mark their white sugars with the letter B, and that the mark for brown is Q; and it appears from the testimony of Bertrand, one of the custom house officers, that he suspected a fraud was designed by the importers, as he discovered the marks on the boxes had been changed from B to Q. Two of the boxes had the letter B still on them.

Whether these changes were made by the planter or the importer does not appear; but Fiske and other witnesses state that the marks which are placed on sugars in Havana, depend very much on the fancy of the planters, and that they are sometimes marked B, with the view of selling them higher.

There does not appear to be any thing in these marks which shows that a fraud was contemplated by the importers. Any such inference is rebutted by many respectable witnesses in the case, who state that the sugars are of the quality denominated in the entry.

The statute under which these sugars were seized and condemned is a highly penal law, and should, in conformity with

[United States v. Eighty-four Boxes of Sugar.]

the rule on the subject, be construed strictly.   If, either through accident or mistake, the sugars were entered by a different denomination from what their quality required, a forfeiture is not incurred.

Under all the circumstances of this case, the court think, that the evidence not only fails to convict the claimants of fraud, in the entry of these sugars by a false denomination, but they think that the weight of testimony is in favour of the quality of the sugars, as stated in the entry.   They therefore reverse the decree of the district court, and direct said court to enter a decree, that the proceeds of these sugars be restored to the complainants, if the duties shall have been paid; and if they shall not have been paid, as they are now due, that the restoration be of the balance of the proceeds, after deducting the duties.

The court think there was probable cause of seizure, and they direct the fact to be certified.

On consideration of the motion of the claimants, and of the arguments of counsel, as well for the United States as for the claimants, thereupon had, it is now here considered, ordered, adjudged and decreed by this court, that a writ of mandamus, as prayed for, be, and the same is hereby awarded, directed to the judge of the district court of the United States for the eastern district of Louisiana, ordering him to grant an appeal in the premises.