72 U.S. 372 (____)
5 Wall. 372
THE HAMPTON.
Supreme Court of United States.

*373 Mr. W.S. Waters, for the appellant and in support of the mortgage claim.
Mr. Ashton, Assistant Attorney-General, contra.
*374 Mr. Justice MILLER delivered the opinion of the court.
The decree of condemnation of vessel and cargo stand unaffected, and the only question presented for our decision is, whether appellant is entitled to have the amount of his mortgage paid to him out of the proceeds of the sale of the vessel.
1. The first ground on which appellant relies is, that the mortgage being a jus in re, held by an innocent party, is something more than a mere lien, and is protected by the law of nations.
The mortgagee was not in possession in this case, and the real owner who was in possession admits that his vessel was in delicto by failing to set up any claim for her. It would require pretty strong authority to induce us to import into the prize courts the strict common law doctrine, which is sometimes applied to the relation of a mortgagee to the property mortgaged. It is certainly much more in accordance with the liberal principles which govern admiralty courts to treat mortgages as the equity courts treat them, as mere securities for the debt for which they are given, and therefore no more than a lien on the property conveyed.
But it is unnecessary to examine this question minutely, because an obvious principle of necessity must forbid a prize court from recognizing the doctrine here contended for. If it were once admitted in these courts, there would be an end of all prize condemnations. As soon as a war was threatened, the owners of vessels and cargoes which might be so situated as to be subject to capture, would only have to raise a sufficient sum of money on them, by bonâ fide mortgages, to indemnify them in case of such capture. If the vessel or cargo was seized, the owner need not appear, because he would be indifferent, having the value of his property in his *375 hands already. The mortgagee having an honest mortgage which he could establish in a court of prize, would either have the property restored to him, or get the amount of his mortgage out of the proceeds of the sale. The only risk run by enemy vessels or cargoes on the high seas, or by neutrals engaged in an effort to break a blockade, would be the costs and expenses of capture and condemnation, a risk too unimportant to be of any value to a belligerent in reducing his opponent to terms.
A principle which thus abolishes the entire value of prize capture on the high seas, and deprives blockades of all dangers to parties disposed to break them, cannot be recognized as a rule of prize courts.
2. The second ground on which appellant relies is based upon the fact that the vessel was liable to confiscation under the act of Congress of July 13, 1861, and that the act of March 3, 1863, protects his rights in the premises.
This latter statute provides, "that in all cases now or hereafter pending wherein any ship, vessel, or other property shall be condemned in any proceeding, by virtue of the acts above mentioned, or of any other law on that subject, the court rendering the judgment" shall first provide for bonâ fide claims of loyal citizens. Although there is nothing in this act, or in its title, to show what the acts above-mentioned were, it may be conceded that the act of July 13, 1861, was one of them. But as the vessel in the case before us was not condemned in any proceeding, by virtue of that act, or of any law on that subject, but was condemned under the international laws of war by which she became lawful prize, it is difficult to perceive how the act of 1863 can have any application to the case. It is certainly not covered by its terms, and we think still less by its provisions.
Congress had, by several statutes, of which the act of July 13th was one, defined certain acts, or conditions growing out of the rebellion, which would render property liable to confiscation to the United States. It became evident that in many of these cases loyal citizens might have rights and interests in such property which justice required to be protected. *376 Hence the passage of the act of March, 1863, and the eighth section of the act of July 13, 1861, the latter of which gives to the Secretary of the Treasury the power of remitting forfeitures and penalties incurred by virtue of that act.
We are quite satisfied that in neither of these provisions did Congress have reference to cases of condemnation as prize jure belli.
It is further said that because the vessel in this case was liable to condemnation under the act of July, 1861, although actually condemned under a principle of international law, the court is bound to apply the statute as though she had been condemned in a proceeding under it. We do not see the force of the argument. Both laws are in force. The vessel was liable under both. The government chose to proceed against her under that law which prescribed the harder penalty. Its right to do so seems to us undeniable. The argument to the contrary would enable a person found guilty of a murder committed by burning down the house of his victim, to plead that he should only be sentenced to the penitentiary instead of being hung, because he was guilty of arson in addition to murder. The case of The Sally[*] is a direct decision of this court, that a statute creating a municipal forfeiture does not override or displace the law of prize.
We do not deny the full control of Congress over the law of prize as it may be administered in the courts of the United States whenever they choose to exercise it. But in the statutes relied on by appellant in this case, we see no evidence of any intention to modify that law in any respect.
There seems to be no reason to doubt the loyalty of appellant, or the fairness of his debt, and we regret our inability to provide for his claim. But until international treaties, or an act of Congress, shall mark another stage in the meliorations of the rigors of war, we are not at liberty to interpolate a principle which would tend so materially to destroy the right of prize capture in time of war.
DECREE AFFIRMED.
NOTES
[*] 8 Cranch, 382