UNITED STATES v. ONE SAXON AUTOMOBILE et al.

(Circuit Court of Appeals, Fourth Circuit.    January 7, 1919.)

No. 1661.

INTERNAL REVENUE ⬦42—REMOVAL OF LIQUOR TO EVADE TAX—FORFEITURE
OF VEHICLE.

An automobile used in removing liquor on which the tax had not been paid, with intent to defraud the government of such tax, *held* subject to forfeiture under Rev. St. § 3450 (Comp. St. § 6352), providing for forfeiture of every "carriage or other conveyance whatsoever" used for such purpose, as against a mortgage taken by the seller of the machine who voluntarily gave possession to the purchaser, but who had no knowledge of its unlawful use.

In Error to the District Court of the United States for the Western District of Virginia, at Roanoke; Henry Clay McDowell, Judge.

Proceeding by the United States for forfeiture of One Saxon Automobile. From a judgment awarding priority to the lien of W. P. Mundy, the United States brings error. Reversed.

R. E. Byrd, U. S. Atty., of Richmond, Va.

G. A. Wingfield, of Roanoke, Va. (H. T. Hall, of Roanoke, Va., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

WOODS, Circuit Judge. The collector of internal revenue, on January 19, 1918, seized one Saxon automobile in which Sandy Hairston was transporting spirituous liquors on which the tax had not been paid. Thereafter forfeiture proceedings were instituted under the following provision of R. S. § 3450 (Comp. St. § 6352):

"Whenever any goods or commodities for or in respect whereof any tax is or shall be imposed, or any materials, utensils, or vessels proper or intended to be made use of for or in the making of such goods or commodities are removed, or are deposited or concealed in any place, with intent to defraud the United States of such tax, or any part thereof, all such goods and commodities, and all such materials, utensils, and vessels, respectively, shall be forfeited; and in every such case all the casks, vessels, cases, or other packages whatsoever. containing, or which shall have contained, such goods or commodities, respectively, and every vessel, boat, cart, carriage, or other conveyance whatsoever, and all horses or other animals, and all things used in the removal or for the deposit or concealment thereof, respectively, shall be forfeited."

W. P. Mundy, the holder of notes secured by a deed of trust on the automobile, intervened, claiming that the proceeds of sale should be applied first to the satisfaction of his debt, thus raising the question whether the forfeiture displaced his lien or interest in the property. The facts were agreed on:

W. P. Mundy, a dealer, on August 10, 1917, sold the automobile to Luther A. Moore for $450, taking for the unpaid portion of the purchase money, payable in monthly installments, 13 notes, secured by a deed of trust covering the property, recorded August 20, 1917. At the

time of seizure by the collector, there was unpaid on the notes $190, of which $80 was overdue. By the terms of the deed of trust and under the laws of Virginia, Mundy had the right to require the trustee to seize the property and sell it in satisfaction of his debt. Hairston had borrowed the automobile from Moore, and was using it for the transportation of contraband liquor when it was seized. Mundy had not at any time information of the use of the automobile to carry contraband liquor, or of any intention so to use it. No claim was made by the purchaser, Moore.

The District Court held that the rights of Mundy under the deed of trust were unaffected by the forfeiture, and that the proceeds of sale should be first applied in satisfaction of his debt, and only the balance paid into the treasury.

No doubt has ever existed of the power of Congress to impose the penalty of forfeiture on property used to defeat the revenue laws, without respect to the guilt of the owner or his knowledge of the unlawful use. Such a statute for the raising of revenue, even when containing provisions of a highly penal nature, is still to be construed as a whole, and in a fair and reasonable manner, and not strictly in favor of a claimant. United States v. Sugar, 7 Pet. 453, 8 L. Ed. 745; United States v. Stowell, 133 U. S. 1, 10 Sup. Ct. 244, 33 L. Ed. 555; United States v. Graf Distilling Co., 208 U. S. 198, 28 Sup. Ct. 264, 52 L. Ed. 452. A strong consideration against any forced construction of the statute to meet the hardship of a particular case is that the law provides for relief from the forfeiture in proper cases by an executive official, and courts should always indulge the presumption that his discretion will be wisely and justly exercised. Nevertheless, if the inference of intention to exempt from forfeiture the property of an innocent owner can be drawn by any reasonable and fair construction of the language of the statute, that construction will be adopted.

This rule of construction has been extended without dissent to protect the innocent owner of property from forfeiture, even when provided by a statute which expresses no limitation or exemption of any kind, where the property has been taken by a trespasser or a thief, or the owner has been deprived of the possession by forces of nature beyond his control. This is for the reason that no right of possession or custody can be acquired by or from a trespasser or thief, or by virtue of the forces of nature against the will of the owner. In such case, the owner of the property has never in a legal sense parted with any right of custody or possession, and hence no statute can operate against his title by reason of the use or custody or possession of the thief or trespasser, or his deprivation of it by the forces of nature. This reasoning obviously does not apply when the owner voluntarily parts with his possession and intrusts his ship or vehicle to another, for in that case the owner is charged with knowledge that the person to whom he has relinquished possession, or some one acquiring the possession from him, may so use the property as to defeat the collection of the revenue, and thus bring it under the condemnation of forfeiture. While the principle is not elaborated, this we think was the distinction in the mind of Chief Justice Marshall in Peisch v. Ware, 4 Cranch, 347, 2 L. Ed.

643. The principle was applied in holding that all previous liens on vessels are overridden by forfeiture in prize cases; the court saying, if it were otherwise, shipowners could in all cases defeat forfeiture by giving mortgages on their ships. The Hampton, 5 Wall. 372, 18 L. Ed. 659; The Battle, 6 Wall. 498, 18 L. Ed. 933; The Siren, 7 Wall. 152, 19 L. Ed. 129.

The same practical considerations apply with force to the use of automobiles in violation of the statute now before us. The enforcement of the revenue statute concerning transportation of liquor is difficult, because of the facility with which automobiles may be used for that purpose without detection. If one thus engaged in illicit transportation could protect his automobile from forfeiture on proof that the legal title was in some one else, or that some one else had a mortgage on it, the difficulty of enforcing the law would be greatly increased, and the penalty of forfeiture almost always evaded.

It seems to us the statute requiring forfeiture is explicit, leaving no room for construction. It is true that it is not violated unless the liquor is removed with intent to defraud the United States of the taxes. But, when fraud in the removal is shown, the statute provides that the conveyance used for the purpose shall be forfeited. There is no limitation or exception that the forfeiture shall depend upon proof of fraud in the owner of the conveyance or on any other condition.

This court, it is true, in United States v. Two Barrels of Whisky, 96 Fed. 479, 37 C. C. A. 518, decided in 1899, where the facts were in substance precisely the same as in this case, held in effect that the limiting words, "with intent to defraud," applied, not only to the act of transportation, but also to the use of the particular conveyance, thus making it a necessary condition of the forfeiture of any interest in the vehicle that the owner of such interest should have an intent to defraud. As reluctant as we are to overrule that decision, we can find no warrant in the statute for attaching this limitation to the use of the conveyance. The court cited in support of its conclusion United States v. Stowell, 133 U. S. 1, 10 Sup. Ct. 244, 33 L. Ed. 555. An examination of that case leads irresistibly to the conclusion that it not only does not support the inference that under such a statute the innocent owner or lienor of the offending conveyance is exempt from forfeiture, but suggests exactly the opposite inference. The statute there under consideration provided as to an illicit distillery that:

Any person "who shall carry on the business of a distiller without having given bond as required by law, or who shall engage in or carry on the business of a distiller with intent to defraud the United States of the tax on the spirits distilled by him, or any part thereof," shall be fined and imprisoned. "And all distilled spirits or wines, and all stills or other apparatus, fit or intending to be used for the distillation or rectification of spirits, or for the compounding of liquors, owned by such person, wherever found, and all distilled spirits or wines and personal property found in the distillery or rectifying establishment, or in any building, room, yard, inclosures connected therewith, and used with or constituting a part of the premises; and all the right, title, and interest of such person in the lot or tract of land on which such distillery is situated, and all right, title, and interest therein of every person who knowingly has suffered or permitted the business of a distiller to be there carried on, or has connived at the same," shall be forfeited to the United States. Act Feb. 8, 1875, c. 36, § 16, 18 Stat. 310 (Comp. St. § 5966).

By Rev. St. § 3305 (Comp. St. § 6085), every distiller who omits to keep books in the form prescribed by the Commissioner of Internal Revenue shall be punished by fine and imprisonment, and—

"the distillery, distilling apparatus, and the lot or tract * * * on which it stands, and all personal property on said premises used in the business there carried on, shall be forfeited to the United States."

The court held that the right, title, and interest of the innocent owner of the real estate was not forfeited by a violation of the law in conducting an illicit distillery thereon, because the statute expressly provided such forfeiture only against the right and title of persons who participated in or consented to the carrying on of a distillery. The court said that the two provisions respecting personal property and real estate each clearly defined its own restrictions, and the restriction inserted in one could not be imported into the other. With respect to the provisions for the forfeiture of personal property the court uses this language:

"In order to give it such effect as will show any reason for its insertion in the statute, it must be construed to intend, at least, that all personal property which is knowingly and voluntarily permitted by its owner to remain on any part of the premises, and which is actually used, either in the unlawful business or in any other business openly carried on upon the premises, shall be forfeited, even if he has no participation in or knowledge of the unlawful acts or intentions of the person carrying on business there, and that persons who intrust their personal property to the custody and control of another at his place of business shall take the risk of its being subject to forfeiture if he conducts, or consents to the conducting of, any business there in violation of the revenue laws, without regard to the question whether the owner of any particular article of such property is proved to have participated in or connived at any violation of those laws. The present case does not require us to go beyond this, or to consider whether the sweeping words 'all personal property' must be restricted by implication in any other respect, for instance, as to personal effects having no connection with any business, or as to property stolen or otherwise brought upon the premises without the consent of its owner."

In United States v. Brig Malek Adhel, 2 How. 210, 11 L. Ed. 239, it is said:

"It is not an uncommon course in the admiralty, acting under the law of nations, to treat the vessel in which or by which, or by the master or crew thereof, a wrong or offense has been done as the offender, without any regard whatsoever to the personal misconduct or responsibility of the owner thereof. And this is done from the necessity of the case, as the only adequate means of suppressing the offense or wrong, or insuring an indemnity to the injured party. The doctrine also is familiarly applied to cases of smuggling and other misconduct under our revenue laws, and has been applied to other kindred cases, such as cases arising on embargo and nonintercourse acts. In short, the acts of the master and crew, in cases of this sort, bind the interest of the owner of the ship, whether he be innocent or guilty, and he impliedly submits to whatever the law denounces as a forfeiture attached to the ship by reason of their unlawful or wanton wrongs." The Palmyra, 12 Wheat. 1, 6 L. Ed. 531; Dobbin's Distillery v. United States, 96 U. S. 395, 24 L. Ed. 637.

Other cases supporting the conclusion we have reached are United States v. One Black Horse (D. C.) 129 Fed. 167; United States v. Two Horses, Fed. Cas. No. 16578; United States v. Two Mules (D. C.) 36 Fed. 84; The Frolic (D. C.) 148 Fed. 921; United States v. Two Hun-

dred and Twenty Patented Machines (D. C.) 99 Fed. 559; New England Dredging Co. v. United States, 144 Fed. 932, 75 C. C. A. 572; United States v. 246½ Barrels of Tobacco (D. C.) 103 Fed. 791.

There are a number of decisions, like United States v. 1,150½ Pounds of Celluloid, 82 Fed. 627, 27 C. C. A. 231, Shawnee National Bank v. United States, 249 Fed. 583, 161 C. C. A. 509, and United States v. One Automobile (D. C.) 237 Fed. 891, in which courts have been able to find, sometimes by somewhat forced construction, such limitations on the forfeiture provided as to exempt an innocent owner or lienor. It is sufficient to say as to the statute now under consideration that such an exemption could only rest upon judicial insertion of limiting words not found in the statute.

Reversed.