## THE NYANZA.

### Petition of MOORE & McCORMACK CO., Inc.

(District Court, E. D. New York. July 29, 1921.)

**War ⬤═29—Sale of seized vessel under Merchant Marine Act held to cut off prior lien; Merchant Marine Act held valid.**

Where a German vessel, interned in the Philippine Islands, was taken over by the United States Shipping Board, under authority of joint resolution of Congress of May 12, 1917, and a proclamation of the President of June 30, 1917, and thereafter, under Merchant Marine Act June 5, 1921, was sold free and clear of all claims or liens, a prior admiralty lien of a national of an allied country was cut off by the sale, and the national was obliged to look to the United States for consideration of its claim; this being the intention of the law, and the law being valid as against the objection that the United States had no power, under international law, to seize the property or claim of a national of a friendly nation, without substituting some physical fund to which the claim might be transferred.

In Admiralty. Libel by the Compagnie Franco Indochinoise against the steamship Nyanza, her engines, etc., opposed by the Moore & McCormack Company, Inc., owner, with petition by the latter interpleading the United States. Libel dismissed without prejudice.

Barker, Donahue, Anderson & Wylie and Harry M. Zuckert, all of New York City (Richard K. McGonigal, of New York City, of counsel), for libelant.

Wood, Molloy & France, of New York City (Melville J. France, of New York City, of counsel), for claimant.

Leroy W. Ross, U. S. Atty., of Brooklyn, N. Y., and James W. Ryan, Asst. U. S. Atty., of New York City.

CHATFIELD, District Judge. The libelant seeks to dismiss exceptions filed by the claimant to the libel. The claimant by its exceptions, and the United States through a suggestion, filed in answer to a petition interpleading the United States under the rule, urges lack of jurisdiction in this court to entertain the cause of action or to issue process therein.

The steamship Nyanza, which was purchased from the United States Shipping Board through the agency of the Emergency Fleet Corporation, has been delivered to the claimant, who has paid in whole or in part therefor. Under the libel filed in this action, the vessel was seized by the marshal, and after some correspondence the United States Shipping Board filed a stipulation to obtain her release from custody, pending the proceedings herein and subsequent to the presentation of the suggestion that the court was without jurisdiction.

The claimant appeared specially, when it filed the exceptions now under consideration, and at the same time, and subject to determination of the question as to jurisdiction, presented an answer denying any knowledge or information as to the allegations of the complaint, except those as to the transfer of the vessel by the Shipping Board, etc., and in the answer expressly denied admiralty jurisdiction.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The issue is sharply and clearly defined. The Nyanza was a German merchant vessel, known as the Esslingen, which, on or about August 4, 1914, received a cargo of rice meal belonging to a French national at a port in Indo-China. The vessel arrived on the 9th of August, 1914, at Manilla, where the master and officers refused to deliver or to transfer this cargo on the demand of the libelant's agent, and subsequently allowed or caused the vessel to be interned by the United States government during the period of the war in which Germany was then engaged. After the entry of the United States into the war, the vessel with its contents was seized, when the officers of the interned vessel were discovered doing damage to its machinery.

In the meantime the libelant had recovered in the courts of the Philippine Islands a judgment against the owners for $43,888.50, with interest, for loss of cargo and damages, and the vessel was attached therefor. The cargo had been turned over to receivers and sold, but was spoiled, and brought little or nothing. The complaint does not show, but the inference is plain, that the libelant had no other security for collecting this judgment, and the judgment has not been paid.

After the seizure of the Esslingen by the United States, under authority of the joint resolution of Congress of May 12, 1917, the Esslingen was taken over by the United States Shipping Board, under a proclamation of the President dated June 30, 1917. Under this joint resolution and by the proclamation, the Secretary of the Navy was to appoint a board of survey to ascertain the actual value of the vessel, etc., "and all property contained therein at the time of its taking." This report was to be filed with the Secretary of the Navy for preservation, and—

"these findings shall be considered as competent evidence in all proceedings on any claim for compensation."

The Esslingen was brought to Jacksonville, Fla., by the United States Shipping Board, and its name changed to the Nyanza, and subsequently, under authority of the Act of Congress of June 5, 1921 (sections 4 and 5, Merchant Marine Act, 41 Stat. 988, c. 250), sold free and clear of all claims or liens to the claimant. The libelant seeks in this action to enforce the admiralty lien which was reduced to judgment in the action in the Philippine Islands, and also the lien obtained by attachment of the boat under the judgment.

Apparently the libelant considers that the admiralty lien, upon which the personam action at Manilla was based, was not merged in the judgment or affected thereby, and that, as the libelant is a national of a friendly or allied country, its property right has never been taken away or severed from the vessel which was liable therefor, as well as under levy upon the judgment, when the United States entered the war. The John G. Stevens, 170 U. S. 113, 18 Sup. Ct. 544, 42 L. Ed. 969.

The libelant admits that Congress and the United States Shipping Board have seized and disposed of the right of the German owners in the vessel and her cargo. They dispute, however, the jurisdiction of the United States under international law to seize the property of a national of a friendly nation, or to dispose of the same, and therefore

contend that the sale of the vessel by the United States was subject to such admiralty liens or claims as were not affected by the seizure of the rights vested in Germany or German subjects at the time. McKnight v. United States, 98 U. S. 179, 25 L. Ed. 115; The Elexea (D. C.) 53 Fed. 359; The St. Jago de Cuba, 22 U. S. (9 Wheat.) 408, 6 L. Ed. 122; North American Commercial Co. v. United States, 81 Fed. 748, 26 C. C. A. 591.

It is apparent, from a consideration of the documents, that in terms and intention all claims to the vessel were transferred from the vessel to the United States, or to the fund obtained by the United States when the vessel was sold. Payment of all such claims must necessarily be provided for by an act of Congress, as a claim against the United States government. The libelant cites such cases as The Buena Ventura, 175 U. S. 384, 20 Sup. Ct. 148, 44 L. Ed. 206, The Nereide, 13 U. S. (9 Cranch) 388, 3 L. Ed. 769, Brown v. United States, 12 U. S. (8 Cranch) 109, 3 L. Ed. 504, and The Paquette Habana, 175 U. S. 677, 20 Sup. Ct. 290, 44 L. Ed. 320, in support of its contention that the United States cannot by seizures of prize, or directly through Act of Congress, taken unto itself the property of aliens of a country with which it is not at war.

If this be so, then the United States could sell no more than it could seize, and the claimant has purchased from the United States only such rights as accrued to the United States, and has taken the vessel subject to such admiralty liens as can be urged against it. But the government has not seized the lien or the property of a friendly neutral; it has seized the ship—a res—to which the lien will attach, but which like ownership of an interest, cannot be separated into parts.

If the government's contention be correct, there is no need of determining the extent of the so-called claim of lien, nor whether the obtaining of the judgment has affected the validity of the lien, nor whether the claim has been diminished by collection. Also, if the government's contention is correct, the libelant must look to the United States under the laws of Congress, for consideration of such claim as it may have, and the present action must be dismissed. The Hampton, 72 U. S. (5 Wall.) 372, 18 L. Ed. 659; The Battle, 73 U. S. (6 Wall.) 498, 18 L. Ed. 933; The Sally, 12 U. S. (8 Cranch) 382, 3 L. Ed. 597.

It is difficult to see why the Congress has not jurisdiction, in the absence of treaty provisions or of international agreements ratified by the United States, to take private property and to make compensation therefor, in such a way as the Congress may see fit. The Congress would have jurisdiction to terminate a treaty by the passage of any law within its constitutional power, whether or not diplomatic relations would be affected thereby. In what way the United States would be called upon to defend the claims against it is not of moment in determining whether Congress has transferred the property in question free from the claims of private, friendly aliens. In other words, the present question depends upon whether Congress has the constitutional power to take the claim of a friendly alien, as well as an enemy alien, in time of war, and in connection with the seizure of the physical prop-

erty of an enemy, without substituting therefor some physical fund to which the claim may be transferred.

In accordance with the principles of international law, the United States, and many other nations, respect the property of neutral or friendly aliens; but does this show that, when necessary for the prosecution of war, the rights of neutrals may not be interfered with? Has not Congress the power to take all property in the possession of, or apparently in the control of, the enemy, and to substitute such demands for compensation as may be legally enforced, whether in tribunals of justice or by treaty? This may be a tort, and not actionable (Juragua Iron Co. v. United States, 212 U. S. 297, 29 Sup. Ct. 385, 53 L. Ed. 520); but that does not contradict the fact.

The claim of the libelant could certainly be urged against Germany, as a part of the damage caused by the war, if such claims were included in the terms of the treaty of peace. If the United States agrees to take care of such claims, and to pay the same out of property taken by it from Germany, and for which, under the treaty, the United States will account to Germany, and which will be used by the United States to satisfy such claims as the United States shall pay or extinguish, it is difficult to see why the sale of this property by the United States should be destroyed, and its value made dubious, by the preservation of all sorts of unknown claims thereto as liens upon the vessel.

If the libelant's contention is correct, then the ships in the hands of the United States Shipping Board could not be disposed of at their market value, but only for such price as a speculator might wish to bid, with the chance of defending all sorts of admiralty claims thereto. It does not seem that the powers of Congress were thus limited, or that such was the intent of the law in question.

The exceptions to the libel should be sustained, and the suggestion of the United States respected and followed, to the extent of dismissing the present libel for lack of jurisdiction, without prejudice to the presentation of the libelant's claim in any way or in any place where it can be considered.