DORSEY v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 26, 1900.)

No. 1,270.

1. NATIONAL BANKS—OFFENSES BY OFFICERS—EVIDENCE.

Evidence to the effect that when a bank rediscounts notes it indorses them, and that a bank held certain notes which it rediscounted, is sufficient to establish the fact, when such notes have become lost or destroyed, that they were indorsed by the bank, and to render admissible testimony of false entries in the books of the bank respecting such notes, made by direction of a defendant charged with having, as cashier, caused such entries to be made for the purpose of concealing the liability of the bank on account of such indorsement.

2. SAME—TRIAL—INSTRUCTIONS.

Where an indictment contained a number of counts charging the defendant, as an officer of a national bank, with having caused false entries to be made in the books, a general instruction that there was not sufficient evidence to show that such entries were made by defendant, and directing a verdict of acquittal on such counts, was properly refused, where there was evidence sufficient to go to the jury upon any one of the counts.

3. SAME—SUFFICIENCY OF INDICTMENT.

An indictment charging a defendant, as an officer of a national bank, with having made a false statement in a report made to the comptroller, is not required to set out such report in full, but is sufficient if it identifies the report by its date, and sets out the particular statement claimed to be false; the only requisite being that it shall clearly advise the accused of the exact charge he is required to meet.

4. SAME—TRIAL—QUESTIONS FOR JURY.

Where a defendant was charged with having, as an officer of a national bank, made false statements in reports to the comptroller, by understating the amount of overdrafts on the bank, and the government proved that the overdrafts existing at the time of the reports in fact largely exceeded the amounts reported, which evidence was met by the defendant by evidence tending to show that a large part of such overdrafts bore interest, and by the claim that he did not consider it his duty to report as overdrafts accounts on which interest was being paid, the sufficiency of such defense, both as to the facts and the question of good faith, was a matter for determination by the jury.

5. SAME—INSTRUCTIONS.

Upon an issue as to whether a defendant was guilty, under the statute, of having made false statements as to overdrafts in a report to the comptroller made by him as an officer of a national bank, where the defendant claimed that a part of such overdrafts bore interest, and were reported by him, in good faith, under the head of "Loans and Discounts," it was not reversible error to refuse a special instruction requested, stating that the defendant could not be found guilty on such charge if the jury found that the entries in the reports were made by him in good faith, and with the honest belief that they were correctly made, when in its general charge,

not excepted to, the court stated that the defendant could not be convicted on such charge unless the entries were "knowingly and intentionally false when made," and were made with intent to defraud or deceive, and that if the jury found that the defendant "honestly believed, and had good reason to believe," that the entries were correct, he would not be guilty. Such charge, taken together, was substantially that requested, and the difference in the language so slight that it cannot be supposed to have been regarded by the jury.

6. SAME—ABSTRACTING MONEY OF BANK—SUFFICIENCY OF EVIDENCE.

The conviction of a defendant charged with having, as a director and agent of a national bank, unlawfully abstracted money of the bank, is sufficiently supported by evidence which warranted a finding that defendant procured the making of two notes, for $4,500, by an employé who was wholly irresponsible, without consideration, and, having access to the funds and books of the bank, appropriated that sum of the bank's money to his own use, leaving the notes in exchange therefor.

7. SAME—PROOF OF CRIMINAL INTENT—EVIDENCE OF OTHER TRANSACTIONS.

On the trial of a defendant upon charges of having, while an officer of a national bank, unlawfully abstracted money from such bank, and having made false entries in reports made to the comptroller, evidence that, at about the same time as the acts charged, the defendant made other reports to the comptroller, containing similar false statements, and that he also procured the execution by an irresponsible third party of a note without consideration, which he discounted on behalf of the bank, and appropriated the proceeds, is admissible on the question of intent, as showing that defendant had acted in bad faith towards the bank in such transactions, although such acts are not counted upon in the indictment.

Sanborn, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Nebraska.

E. F. Gray, for plaintiff in error.

A. J. Sawyer (W. S. Summers and S. R. Rush, on the brief), for the United States.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This writ of error was brought to review a judgment of the district court of the United States for the district of Nebraska, whereby Frank M. Dorsey, the plaintiff in error, was sentenced to imprisonment for various violations of the act relating to national banks. Three indictments were returned against the accused, which were subsequently consolidated for trial, and together contained numerous counts, charging different offenses. Upon the trial the accused was convicted on 13 counts. A like sentence of six years' imprisonment was imposed for the offense described in each of the 13 counts, but, as the sentences run concurrently, the accused was, in effect, sentenced to one term of imprisonment, for the period of six years. The indictments are framed under section 5209 of the Revised Statutes of the United States, and charge three kinds of offenses, namely, six counts charge the making of false entries in the bills-receivable register of the First National Bank of Ponca, Neb., of which bank the accused was cashier, five counts charge the making of false reports to the comptroller of the currency, and the remaining two counts charge the unlawful abstraction of funds. The offenses were committed between July 19, 1892, and April 13, 1893, during which time, or at least until February 1, 1893, the accused was

acting in the capacity of cashier as well as director of the bank. The false entries in the bills-receivable register consist of entries therein showing that certain notes held by the bank had been paid, and the dates of their payment, when they had not been paid, while the false entries in the reports to the comptroller consist either of false statements concerning the amount of overdrafts upon the bank, or concerning the amount of its loans and discounts, or concerning the amount due to it from other banks and bankers, or concerning the extent of the liability of the directors to the bank. The assignments of error are very numerous, but as counsel have grouped them, for convenience, into classes, and have thereby reduced their number somewhat, we shall pursue the same course.

The government claimed on the trial that the accused had practically the entire control of the First National Bank of Ponca during the period when the alleged offenses were committed, and prior thereto; that he had made a practice of rediscounting notes held by the bank, with the bank's indorsement thereon to give them currency; that many of such notes were worthless when they were thus discounted; and that on the rediscount of such worthless paper, with the aid of the bank's indorsement thereon, the accused had caused entries to be made in the bills-receivable register of the bank that such notes were paid, with intent to conceal the bank's liability upon the paper. The testimony which was offered to sustain these charges was both voluminous and cogent.

The first assignment of error is that the court erred in admitting in evidence the following entry, "Paid 11/19/92," which was found in the bills-receivable register of the First National Bank of Ponca, in the column of "Remarks," opposite a note made by J. E. Strong, dated "9/7/92," which the bank had discounted, and which matured, according to the bills-receivable register, on March 7, 1893. The objection to this entry when it was received and read in evidence was "that no foundation has been laid, and it has not been shown that defendant was sufficiently connected with it; that it is not shown that he has ever directed this entry." While the objection so made is not as specific as it might have been, yet we understand that it was intended to raise the point, first, that the Strong note had not been produced, and that it had not been shown that the entry complained of was made by direction of the accused. It appears, however, that the assistant cashier of the bank, who seems to have acted at all times under the immediate direction of the accused, gave evidence which tended to show that the accused had on several occasions given him instructions to enter notes, which were held by the bank, as paid, although they were not paid, but were merely rediscounted with other banks, and that the entry in question was an entry made by him pursuant to such instructions. Other evidence that was introduced showed that a note made by J. E. Strong for $2,000, dated "ninth month, seventh day, 1892," and due on March 7, 1893, was rediscounted by the First National Bank of Elkader, Iowa, for the First National Bank of Ponca, Neb., on November 25, 1892, and that it was held by the former bank until March 15, 1893, and was not then paid, but was replaced by other notes received from the

First National Bank of Ponca. There was other evidence produced which showed that due search had been made for the Strong note, and that it could not be found, but had probably been lost or destroyed. The evidence, taken altogether, was sufficient, we think, to warrant a jury in finding that the First National Bank of Ponca had held a note of J. E. Strong for the sum of $2,000, and had procured its rediscount with another bank, and had entered it as paid on its own books, although it was not paid, but was simply rediscounted, and that this had been done by direction of the accused. The point which is made in this court respecting said note and one or two other rediscounted notes, which were not produced,— that there was no specific proof in the trial court to show that such rediscounted notes were indorsed by the First National Bank of Ponca when it procured their rediscount,—was not made in the trial court as an objection to their introduction, and for that reason the point is not open for consideration here. But it will be proper to observe in this connection that there was testimony to the effect that "rediscounted notes" are notes held by a bank, which it indorses and procures another bank to discount, so that, when the various witnesses testified in respect to the several notes that the First National Bank of Ponca had rediscounted them, the statement implied, in the light of the testimony as to the meaning of the word "rediscounted," that the notes had been indorsed. Moreover, such of the rediscounted notes as the government was able to produce were indorsed by the last-named bank. We are of opinion, therefore, that the objection to the introduction of the entry in the bills-receivable register to the effect that the Strong note was paid on November 19, 1892 (that being the purport of the entry), was not well made, and was properly overruled.

The second, third, fourth, and sixth grounds for reversal that are relied upon by counsel for the plaintiff in error have reference to entries found in the bills-receivable register of the First National Bank of Ponca, and relate to notes held by that bank which were made by W. A. Hickman, John Forbes, J. E. Barker, and W. E. Holmes, and were subsequently rediscounted with other banks. These entries are the same as the one already considered. They showed that the several notes were marked as paid on the bills-receivable register as of given dates. The objections made at the trial to the introduction of the entries were in substance the same as those already noticed, and the proof tending to show that the several notes were outstanding and unpaid long after they were marked "Paid" was substantially the same as that respecting the Strong note. There was also the same species of proof tending to show that the false entries as respects these notes were made in obedience to instructions, general or special, that were given by the accused to his subordinates, and in accordance with which they acted. We think, therefore, that the objections to the admission of these several entries were properly overruled.

Complaint is made of the admission of an entry found in the bills-receivable register showing the payment of a note of I. Conner for $458 on January 11, 1893. The facts having reference to the ad-

missibility of this entry are slightly variant from those affecting the admissibility of the entries concerning the other notes. There was evidence tending to show that the bank held such a note as the one last described; that it was executed on December 8, 1892; that it matured on March 8, 1893; that it was rediscounted with the German Savings Bank of Davenport, Iowa; and that it remained in that bank until its maturity, notwithstanding the fact that it was entered as paid on the bills-receivable register of the First National Bank of Ponca on January 11, 1893. These facts were established mainly by a private memorandum book which was kept by the accused, as cashier, showing with what banks notes had been rediscounted. It seems to have been his practice, or the practice of the bank with which he was connected, to keep track of notes that had been rediscounted and entered on its own books as paid, by making a memorandum showing the amount thereof, by whom they were made, and by whom held,—in this private memorandum book. No error is assigned because of the admission of the book, and as that showed that the Conner note was not paid on January 11, 1893, but was outstanding, and then held by a bank in Davenport, Iowa, we perceive no merit in the objection which was made to the entry found in the bills-receivable register, showing that it was paid on the latter date.

In this connection it will be most convenient to notice another exception, which was taken to the refusal of the court to give an instruction to the jury that there was no sufficient evidence to show that the alleged false entries in the bills-receivable register were made by the accused, and that a verdict of acquittal should be returned upon all of the counts containing such charges. This instruction was properly refused, because there was, as we think, some evidence tending to show that the aforesaid entries were false, and that they were made by direction of the accused. Besides, if there was evidence sufficient to go to the jury upon any of the counts charging false entries in the bills-receivable register, as there clearly was as respects some of the counts, this instruction directing a verdict for the defendant on all of such counts ought not to have been given. This court has so decided in Harless v. U. S., 34 C. C. A. 400, 92 Fed. 354.

It is next assigned for error that the court should have excluded from the jury a report to the comptroller of the currency which was made by the accused, purporting to show the condition of the First National Bank of Ponca on December 9, 1892. The objection to this report was "there is no sufficient count in the indictment relating to said report, and that each of the counts relating to said report is insufficient, in not setting out the report sufficiently, and the report is irrelevant." It is contended, as we understand, that the count was insufficient because it did not set out the entire report to the comptroller. The count respecting which this objection is made specified, in substance, that the accused, in and by said report, the date whereof was correctly stated, "unlawfully, knowingly, and willfully did make a certain false entry in said report; * * * that is to say, a false entry to the effect that at the close of business on said 9th day of December, 1892, the amounts of loans and discounts was $137,072.64, whereas in truth and in fact the amount of the loans and discounts of

the said association was then a much smaller amount, to wit, $125,-732.14,—he, the said Frank M. Dorsey, then and there well knowing said entry to be false,—thereby intending to injure and defraud," etc. None of the counts of the indictment were challenged by a demurrer or motion to quash the same for insufficiency, and, not having been so challenged, the count from which the above excerpt is made should at least be held good after verdict. But on broader grounds we think that the point is untenable. It has never been ruled, so far as we are aware, that an indictment like the one at bar, charging a particular false statement in a report made to the comptroller of the currency, should set out the report in full. Such reports are usually very lengthy documents, and would incumber the record needlessly, and render pleadings interminable, if they were set out at length. Nor is it necessary for the protection of the accused that they should be so pleaded. A reference to the report by its date, etc., so as to fully identify the document, and a specification of the particular false statement complained of, in such language as will advise the accused beyond peradventure of what he is accused, is all that should be required in an indictment. Any further prolixity of statement would embarrass pleading unnecessarily, and would prove of no service to the accused, except, perhaps, to afford him a better opportunity to take advantage of an alleged variance between the proof and the pleading when the report is produced. We are of opinion that the count to which the objection was addressed was sufficient, and that the objection as made was properly overruled.

It is further urged with respect to the count last referred to that the evidence was insufficient to sustain a conviction thereunder. This point was not made, however, in the trial court, by a motion to direct a verdict in favor of the defendant; and, as it was not made in that form, the defendant may be regarded as having consented to allow the jury to determine whether the evidence respecting the alleged false statement was sufficient to warrant a conviction. Insurance Co. v. Unsell, 144 U. S. 439, 12 Sup. Ct. 671, 36 L. Ed. 496; Village of Alexandria v. Stabler, 4 U. S. App. 324, 1 C. C. A. 616, 50 Fed. 689; City of Lincoln v. Sun Vapor Street-Light Co. of Canton, 8 C. C. A. 253, 59 Fed. 756, 761. But, without basing our conclusion on the last-mentioned rule, which is more especially applicable to civil cases, we have examined the testimony, and reached the conclusion that there was sufficient evidence to warrant the trial court in submitting to the jury the issue concerning the falsity of the report.

The next assignment is that another count of the indictment on which there was a conviction was insufficient, and that the trial court erred in admitting in evidence a report to the comptroller of the currency which was intended to substantiate the charge contained in such count. It is also said that there was no sufficient evidence to warrant a conviction on the count. The count to which these objections were addressed, after describing the report of December 9, 1892, in such manner as to fully identify it, charged, in substance and in apt language, that it contained a statement that $4,140.44 was due to the First National Bank of Ponca from state and private banks at the close of business on December 9, 1892, whereas, in truth and in fact,

nothing was then due from such banks, as the accused well knew, and that the statement was made by him with intent to deceive, etc. We perceive no defect in the count which can avail the accused after verdict, and are of the opinion that the count was good even before verdict. Concerning the sufficiency of the evidence to sustain a conviction on the count now under consideration, it may be said that the accused did report to the comptroller of the currency that $4,140.44 was due from state and private banks to the First National Bank of Ponca on December 9, 1892, whereas the daily-statement register of the bank showed that nothing was so due. The accused attempted to show that the item in the report could be accounted for by a note for $4,000, secured by a mortgage, that had been sent to another bank for collection some time prior to the making of the report, and that it had reference to such collection. The government claimed, on the other hand, that no money was ever received or expected to be received on the note which was thus transmitted for collection, and that, some time after the report was made, said note was taken up by other worthless notes, and that nothing was received thereon, and that the accused was guilty of intentional deceit in making the statement in his report that $4,140.44 was at that time due and in transit from other banks. It is manifest, we think, in view of all the evidence concerning this transaction, that it was the province of the jury to determine whether the entry in question was false and was made with an intent to deceive. Counsel for the accused seems to have entertained a similar opinion at the trial, inasmuch as he failed to ask an instruction for an acquittal upon this count.

It is also contended that three other counts of the indictment upon which a conviction was had, to wit, those counts which charge the making of false statements concerning the liabilities of directors to the bank and concerning overdrafts upon the bank, are insufficient to sustain a conviction. The supposed defects in these counts are similar to those already noticed, and, in view of what has already been said respecting the other counts, they do not require special notice. The offense in each instance was described with sufficient clearness to advise the defendant of the precise nature of the false statement of which he was accused, and to enable him to make his defense thereto, and to preclude further prosecution for the same offense if he was either acquitted or convicted. They must accordingly be adjudged sufficient after verdict.

It is also insisted by the accused that the evidence was inadequate to convict him on two of the last-mentioned counts; being those which charge the making of false statements concerning overdrafts in reports that were sent to the comptroller, showing the condition of the bank on July 12, 1892, and on September 30, 1892. In the first of these reports the accused stated the existing overdrafts to be $564.48, and in the latter to be $888.12. The government claimed, and likewise proved, that on July 12, 1892, the actual overdrafts were $5,564.48, and that on September 30, 1892, they were $9,888.12. The accused then attempted to explain the discrepancy by showing that on each occasion a large part of the existing overdraft bore interest, and that he did not esteem it his duty to report an account as

overdrawn if interest was being paid on the same. Concerning this contention it is sufficient, we think, to say that it was the province of the jury to decide whether the discrepancy shown between the actual overdraft and the reported overdraft on each of these occasions had been satisfactorily explained; whether the bank was in fact receiving interest on those accounts which were overdrawn, but not so reported; and whether, in failing to report such accounts as overdrawn, the accused had acted in good faith, and without intent to deceive. The jury had an undoubted right to determine these questions, and the counts ought not to have been withdrawn from their consideration on the assumption that the evidence was inadequate to sustain a conviction.

The next point which should be considered in this connection consists in the refusal of the court to give an instruction that was requested by the accused. This instruction was to the effect that, even if the entries relating to overdrafts in the reports to the comptroller were not made correctly, yet that the defendant could not be found guilty under the counts relating to the overdrafts, if the jury found from the evidence that the entries were made by the accused in good faith, and with the honest belief that they were correctly made. The trial court did not refuse the instruction because the rule of law therein declared was erroneous, but, as the record shows, "because given in the general charge." The general charge of the court was not excepted to, but stands unchallenged in all of its parts, so that the error assigned on this head is not that the general charge was erroneous, but that the rule stated in the special instruction was not sufficiently stated by the court of its own motion. We feel constrained to hold that this proposition is untenable. In its general charge the court instructed the jury to the following effect:

"So far as these counts charging false entries are concerned, under the evidence in this case there remain but two questions for you to determine under any of the counts of the indictment submitted to you. They are, first, did the defendant make any of the false entries charged? If you find that he did, then, second, did he make any of them knowingly, with the intent to injure and defraud the bank or any other body politic or corporate or individual person, or to deceive any officer of the association, or to deceive any person appointed or thereafter to be appointed by the comptroller to examine the bank? The false entry that is punishable under this statute is an entry that was knowingly and intentionally false when made. It was not the purpose of congress to punish an officer who, through an honest mistake, makes an entry in one of the books or reports of the bank which he believed to be true, when it is in fact false. It follows that, in order to convict the defendant, you must find, beyond a reasonable doubt, not only that he made a false entry in one of the books or reports of the bank, but also that he knew the entry to be false when he made it."

In another part of the charge, while referring to the evidence in the case, the learned trial judge used the following language:

"There has been evidence introduced in the case on the part of the defendant for the purpose of explaining some of the entries made in the reports. Evidence has been received tending to show that some of the items alleged to be false in the report were stated as they were for the reason that some of the items which the prosecution claim ought to have been reported under a certain head were reported under other heads. For instance, defendant seeks to explain alleged false entries in regard to overdrafts by testifying that over-

drafts upon which interest was agreed to be paid were listed under the head of 'Loans and Discounts.' If you find from the evidence that the defendant honestly believed, and had good reason to believe, that it was his duty to list overdrafts, upon which interest was to be paid by agreement, under the head of 'Loans and Discounts,' and actually did list such overdrafts under such head, and that such overdrafts did actually draw interest, by agreement with the parties who made the overdrafts, then he would not be guilty as to that particular charge."

In view of these excerpts from the charge, we think it must have been made exceedingly clear to the jury that with respect to the several reports concerning overdrafts the defendant could not be held liable as for a crime if he had acted in good faith under the impression that the overdrafts were reported correctly under appropriate heads, and this was the substance of the special instruction. . In a case of this character, where it appears that the jury were fully and clearly instructed by the court, of its own motion, on every vital point in the case, and in such a manner that it seems impossible that they could have been misled, and where no part of the charge in chief is excepted to, we feel greatly indisposed to reverse a judgment, that has been rendered after a lengthy and costly trial, because of a difference between the language used in a special instruction which the court declined to give, and the court's own language in the general charge, which difference is so slight that it would doubtless have passed unnoticed if the special instruction had been given, and obviously would not have affected the result of the trial.

Another error assigned upon the record is the admission in evidence of two notes made by M. Gonigal,—one for the sum of $2,500, and the other for $2,000. These notes were offered, as it seems, to substantiate a charge laid in two counts of the indictment, that the accused, as a director and agent of the First National Bank of Ponca, had willfully, knowingly, and unlawfully abstracted money of the bank to the amount of the two notes. The sole objection which was made when the notes were offered in evidence was that they "were irrelevant; that no foundation has been laid." This objection is not adequate to raise any question with respect to the sufficiency of the two counts of the indictment in question, and we shall indulge in no discussion of that question, as no demurrer was interposed to the counts, or motion made in arrest of judgments thereon. To sustain these counts the government showed that M. Gonigal, by whom the notes were signed, was a stable boy or horse wiper in the employ of the accused; that he was dissipated and had no means; that the notes were utterly worthless; that they were in the handwriting of the accused, and appeared to have been placed to his credit on the books of the bank, and were found in its possession by the receiver thereof when the bank became insolvent. The accused testified in his own favor that he presented these notes to E. D. Higgins, the cashier of the First National Bank of Ponca, after he had himself ceased to act in that capacity, and that he obtained the money thereon by discount, in the usual way. But Higgins denied these statements, and denied that he was consulted at any time by the accused with reference to any such discount. The evidence concerning this transaction, taken in connection with all the other facts and circumstances in evidence,

was quite sufficient, in our judgment, to warrant any jury in concluding that the accused, having access to the books and the funds of the bank by virtue of his position as a director therein, had deliberately taken the money of the bank without the consent of any one, and had appropriated it to his own use, leaving in exchange therefor two notes which were utterly worthless, and rested upon no consideration whatever as between himself and the stable boy whose signature he had obtained. Such an act, if committed, was a willful misappropriation or abstraction of the funds of the bank by a director thereof. The two notes were properly admitted in evidence.

There remain but two other assignments of error which we feel called upon to notice, and they embrace exceptions that were taken to the admission of a note which was executed by W. E. Holmes for $1,500 on December 27, 1892, and an exception that was taken to the admission of a report which was made by the accused to the comptroller on May 17, 1892. The Holmes note was objected to for irrelevancy, whereupon counsel for the government stated that he did not offer it to prove any substantive charge contained in the indictment, but to disclose the intent that had actuated the accused in doing certain acts which were counted upon in the indictment. The proof as respects this note showed that it was in the handwriting of the accused; that it had been made by Holmes at the instance and request of the accused when the former was clerk for a town-site company of which the accused was general manager; that the note was not founded upon any consideration, as between the maker and the payee; and that the maker of the note, when he executed it, was financially irresponsible, and did not execute it with an intent to pay it. This note, it seems, was discounted by the defendant with the First National Bank of Ponca while he was its cashier; and, as we infer from the testimony, it was among the worthless notes held by the bank when it became insolvent and passed into the hands of a receiver. The particular act which the trial court permitted to be proven was nearly contemporaneous with other acts that were counted upon in the indictment as offenses. The proof in question showed that the accused had acted in bad faith towards the institution of which he was a trusted officer, that he had used its funds to discount worthless notes for his own benefit, and that his conduct was such as would naturally lead one in his position to indulge in misrepresentation and deceit concerning the affairs of the bank. Taken altogether, the transaction in question was so nearly related in point of time to the offenses charged in the indictment, and had such a marked tendency to show that the accused was acting in bad faith and with a dishonest purpose as respects the bank and its creditors, that we feel constrained to hold that proof of the transaction was properly admitted in evidence, although no count of the indictment was founded upon that transaction. The same may be said of the admission of the report to the comptroller which was made by the accused under oath on May 17, 1892. When that report was offered in evidence, counsel for the government also stated to the court that they offered it merely for the purpose of showing that the report contained a false statement of the amount of existing overdrafts which was of the same

character as the false statements contained in the report to the comptroller of July 12, 1892, and September 30, 1892, which were counted upon in the indictment, and that they offered the report for the purpose of showing the intent that had inspired all of the reports. The report stated that the overdrafts amounted to $29.27 on May 19, 1892, but other testimony offered in connection therewith showed that such statement was false, and that the overdrafts at that time aggregated $6,029.17. We are of opinion that both the Holmes note and the report to the comptroller of May 17, 1892, and the other evidence that was offered with respect to the note and the report, were relevant and competent to establish a criminal intent on the part of the accused, and that the object which the prosecution had in view in offering said testimony was so fully explained to the court and jury as to prevent any possible misconception of the purpose for which it was admitted. We refer to what has heretofore been said by this court concerning the admission of similar testimony in Dow v. United States, 49 U. S. App. 605, 27 C. C. A. 140, 82 Fed. 904, 909, and in Bacon v. U. S., 38 C. C. A. 37, 97 Fed. 35, 42. Our conclusion is, after an attentive study of the record, that the verdict below was well supported by the evidence, and that nothing transpired at the trial which would warrant a reversal. It is accordingly ordered that the judgment below be affirmed, and that the defendant below surrender himself to the United States marshal for the district of Nebraska, in execution of the sentence heretofore imposed by the trial court.

SANBORN, Circuit Judge (dissenting). In my opinion, there were three grave errors in the trial of this case, which entitle the plaintiff in error to another hearing:

1. The government was permitted to introduce in evidence, over the objection of defendant, as a part of its case in chief, a report of the comptroller of the currency dated on May 17, 1892, which was not counted on in any of the indictments, "for the purpose," as counsel for the government stated, "of showing that certain items were falsely made in that report, of a similar kind to those charged in other reports, and for the purpose of showing the intent of defendant in making false entries in reports, aside from those on which he is specifically charged." That is to say, this report was offered in evidence for the purpose of showing an independent offense with which the plaintiff in error was not charged, and for the purpose of showing his intent to commit that offense, in the hope, doubtless, that the jury would infer from this that he intended to commit and did commit some of the offenses with which he was charged. This report seems to me to be irrelevant, because it is not mentioned in the indictments; because no charge of false entries in it had ever been made in any way before it was offered in evidence upon the government's case in chief; because no proof that any of the entries in it were in fact false had been produced when it was received in evidence; because it was not competent to try or convict the plaintiff in error of the offense of making false entries in this report, without indictment or notice, and it was not competent to convict him of any other offense

by proof of this crime with which he had never been charged, of which he had received no notice, and against which he had no opportunity to prepare his defense.

2. The note of W. E. Holmes was allowed in evidence, over the objection of the plaintiff in error, for the purpose of showing his intent to abstract money from the bank. But there was no evidence that the plaintiff in error had ever indorsed that note, that he had ever discounted it at the bank, or that he had ever received or tried to obtain a cent of money from the bank on account of it. The note therefore had no tendency to show any intent on his part to abstract anything from the bank, because there was no evidence that he obtained anything, or tried to obtain anything, from the bank on account of it.

3. The plaintiff in error requested the court to instruct the jury that, if certain entries in the reports were not correctly made, yet if they believed from the evidence that they were made in good faith, and in the honest belief that they were correctly made, it would be their duty to find the defendant not guilty. The court refused to give that request, and charged the jury that if they found from the evidence that the defendant honestly believed, and had good reason to believe, that the entries were correct, he would not be guilty of making false entries. The request appears to me to be the law, and the charge seems to be erroneous. The plaintiff in error was not guilty of the offense of making false entries, if he made them in good faith, in the honest belief that they were right and true, after he had made an honest effort to ascertain the truth, even though his reasons for his belief may not have been good, either in law or in fact. Graves v. U. S., 165 U. S. 323, 17 Sup. Ct. 393, 41 L. Ed. 732; U. S. v. Allis (C. C.) 73 Fed. 165, 170.