UNITED STATES v. NINETY-NINE DIAMONDS et al.

(Circuit Court of Appeals, Eighth Circuit. August 19, 1905.)

No. 2,139.

**1. STATUTORY CONSTRUCTION—RULES.**

All the words of a statute should have effect. The intention of the enacting body is not expressed by a part, but by all the statute; and, as the purpose of construction is to ascertain that intention, "all the words of a law must have effect rather than that part should perish by construction."

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, §§ 282, 283.]

**2. SAME—PLAIN TERMS OF STATUTE MAY NOT BE CONSTRUED AWAY.**

Construction and interpretation have no place or office where the language of a statute is unambiguous and its meaning is evident.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, § 266.]

**3. SAME—CONSTRUCTION MUST BE SENSIBLE—OBJECT SOUGHT MAY BE CONSIDERED.**

Statutes should have a rational, sensible interpretation. The object which the legislative body sought to attain and the evil which it endeavored to remedy may always be considered to ascertain its intention and to interpret its act.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, § 262.]

**4. CUSTOMS DUTIES—FALSE STATEMENT—LOSS OF DUTIES ESSENTIAL TO OFFENSE.**

None of the acts denounced by Act June 10, 1890, c. 407, § 9, 26 Stat. 135 [U. S. Comp. St. 1901, p. 1895], constitute an offense thereunder, unless they deprive the United States of some of its lawful duties.

**5. SAME.**

The word "false" in this section, which prescribes punishment by forfeiture, fine, and imprisonment for the use of a false statement in making an entry of imported goods, means more than incorrect or erroneous. It implies wrong or culpable negligence, and signifies knowingly or negligently untrue.

**6. PENALTIES—FORFEITURES—"FALSE" AND "FALSELY" MEAN KNOWINGLY OR NEGLIGENTLY UNTRUE.**

The words "false" and "falsely," in statutes and contracts which impose forfeitures or penalties for false acts or acts falsely done, generally imply culpable negligence or wrong. They signify more than incorrect or incorrectly, and mean knowingly or intentionally or negligently false or falsely, in the absence of express provisions in the statutes or contracts or reasonable implications from them, their subject, and the circumstances to the contrary.

**7. CUSTOMS DUTIES—FALSE STATEMENTS—EVIDENCE.**

One who had the right of possession of and a lien upon imported merchandise for the duties and for transportation expenses which he had paid, together with the option to purchase any of it at fixed prices, or to return it to the tentative vendors, declared in good faith in making an entry of the goods, which were invoiced to him, that he was the owner. His statement did not deprive the government of any lawful duties. *Held*, the use of this statement to make the entry did not constitute an offense, under Act June 10, 1890, c. 407, § 9, 26 Stat. 135 [U. S. Comp. St. 1901, p. 1895].

(Syllabus by the Court.)

In Error to the District Court of the United States for the District of Minnesota.

For opinion below, see 132 Fed. 579.

Charles C. Houpt, for the United States.

W. Wickham Smith (Edward C. Stringer and McNeil V. Seymour, on the brief), for defendants in error.

Before · SANBORN and HOOK, Circuit Judges, and ADAMS, District Judge.

SANBORN, Circuit Judge.    This is an action by the United States to confiscate 99 diamonds, under Act June 10, 1890, c. 407, § 9, 26 Stat. 135 [U. S. Comp. St. 1901, p. 1895], for the administration of the customs, upon the ground that the claimant, Henry Bockstruck, in making his entry, declared that he was the owner and that Simon Fink was the seller of the merchandise, when the truth was that he was the consignee and Fink was the consignor.    These were the facts:    The diamonds had been sent and invoiced to Bockstruck from Antwerp by Simon Fink, under an agreement that he should pay the duties and the expenses of the transportation from New York and should have the option to keep and pay for, at the invoice price, or to return to Fink, Bodenheimer & Co. in New York, any or all of the diamonds.    He paid the duties and the transportation charges from New York, and had a lien on the diamonds for those amounts.    He had the right to the possession of the merchandise.    The invoice billed the goods to him at the prices specified as the purchaser, and the deputy collector told him to use the declaration of an owner prescribed by Act June 10, 1890, c. 407, § 5, 26 Stat. 132 [U. S. Comp. St. 1901, p. 1889].    There was no claim or evidence in the court below that Bockstruck intended to make any statement that was not true, or to deceive the officers of the government, or that the statement he made in any way deprived or was intended to deprive the United States of any of the lawful duties upon the merchandise referred to therein.    The court below held that Bockstruck was the owner of the diamonds and dismissed the action.

In the briefs and arguments of counsel these three questions have been discussed:    Was the claimant the owner of the merchandise? Is one, who in making an entry of imported merchandise innocently makes an untrue statement by mistake, accident, or honestly, after the exercise of reasonable care, subject to the forfeiture and penalties imposed by section 9?    Is one who makes an entry of imported merchandise by means of a false statement, which does not deprive the United States of any lawful duties, liable to this forfeiture and these penalties? These questions will be considered in their reverse order.

Section 9 reads in this way:

"That if any owner, importer, consignee, agent, or other person shall make or attempt to make any entry of imported merchandise by means of any fraudulent or false invoice, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, or shall be guilty of any willful act or omission by means whereof the United States shall be deprived of the lawful duties, or any portion thereof, accruing upon the merchandise, or any portion thereof, embraced or referred to in such invoice, affidavit, letter, paper, or statement, or affected by such act or omission, such merchandise or the value thereof, to be recovered from the person making the entry, shall be forfeited, which forfeiture shall only apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles of merchan-

dise to which such fraud or false paper or statement relates; and such person shall, upon conviction, be fined for each offense a sum not exceeding five thousand dollars, or be imprisoned for a time not exceeding two years, or both, in the discretion of the court."

The contention of counsel for the government is that the clause "by means whereof the United States shall be deprived of the lawful duties or any portion thereof" is limited in its effect to the crime of using any "willful act or omission," and that all the other offenses denounced by this section are complete, although they have no effect upon the collection of the duties and are not intended to, and do not deprive the government of any portion of them. In this position he is sustained by two decisions of the Circuit Court of the Southern District of New York. U. S. v. Cutajar (C. C.) 60 Fed. 744; U. S. v. Rosenthal (C. C.) 126 Fed. 766, 776. The respect and deference which the opinions of the learned judges who rendered these decisions always command have invoked a careful and deliberate consideration of the reasons they suggest for their views and of the argument of counsel; but they have not proved convincing. If we eliminate from section 9 the words that are not material to the question under discussion, it reads:

"If any owner shall make any entry by means of any false invoice, affidavit, letter, paper or statement, or shall be guilty of any willful act or omission by means whereof the United States shall be deprived of the lawful duties accruing upon the merchandise embraced or referred to in such invoice, affidavit, letter, paper or statement, or affected by such act or omission, such merchandise shall be forfeited."

If the deprivation clause is limited in its effect to the willful act or omission, the words "embraced or referred to in such invoice, affidavit, letter, paper or statement" have neither function nor effect. If these words were omitted and the section read:

"If any owner shall make any entry by means of any fraudulent or false invoice, affidavit, letter, paper, or by means of any false statement the merchandise shall be forfeited, and if in making any entry any owner shall be guilty of any willful act or omission by means whereof the United States shall be deprived of the lawful duties accruing upon the merchandise affected by such act or omission such merchandise shall be forfeited."

it would have the exact effect which the construction of counsel for the government gives it. This fact is a demonstration of the proposition that the Congress intended, and by the words it used expressly declared, that the deprivation clause should have broader scope, and that it should qualify the entry by means of any fraudulent or false affidavit, letter, paper, or statement, as well as the guilt of any willful act or omission. Cardinal rules for the interpretation of the law are that the intention of the legislative body should be ascertained and given effect, and that this intention must be deduced, not from a part, but from the entire statute which expresses it, because the Legislature did not express its intention by a portion, but by all of the law upon the subject. An interpretation which restricts this deprivation clause to the guilt of "any willful act or omission" flies in the teeth of the maxim that "all the words of a law must have effect, rather than that part should perish by construction." City of St. Louis v. Lane, 110 Mo. 254, 258, 19 S. W. 533; Knox Co. v. Morton, 15 C. C. A. 671, 675,

68 Fed. 787, 790; Wrightman v. Boone Co., 31 C. C. A. 570, 572, 88 Fed. 435, 437; Paving Co. v. Ward, 28 C. C. A. 667, 674, 85 Fed. 27, 34.

The section expresses the intention to create and punish several offenses. If all its language is carefully analyzed and separated into its component parts applicable to the various offenses, it clearly reads that, if any owner makes an entry (1) "by means of any fraudulent or false invoice" whereby the government is deprived of the lawful duties "accruing upon the merchandise embraced or referred to in such invoice," or (2) "by means of any fraudulent or false affidavit" whereby the government is deprived of the lawful duties "accruing upon the merchandise embraced or referred to in such affidavit," or (3) "by means of any fraudulent or false report" whereby the government is deprived of the lawful duties "accruing upon the merchandise embraced or referred to in such report," or (4) "by means of any fraudulent or false letter" whereby the government is deprived of the lawful duties "accruing upon the merchandise embraced or referred to in such letter," or (5) "by means of any fraudulent or false paper" whereby the government is deprived of the lawful duties "accruing upon the merchandise embraced or referred to in such paper," or (6) "by means of any false statement" whereby the government is deprived of the lawful duties "accruing upon the merchandise embraced or referred to in such statement," or (7) if any owner shall be guilty of "any willful act or omission" whereby the government shall be deprived of the lawful duties "accruing upon the merchandise affected by such act or omission," such merchandise shall be forfeited. The section is the consolidation of these component parts and their expression in a single sentence. Its language is plain and its meaning evident. It is only by expunging or disregarding a portion of the section that an act which does not deprive the government of lawful duties can be made an offense under it. But a penal statute which creates and denounces a new offense should be strictly construed. A man ought not to be punished unless he falls plainly within the class of persons specified by such a statute. An act, which is not clearly an offense by the express will of the legislative department of the government, must not be made so after its commission by the interpolation of expressions or by the expunging of some of its terms by the judiciary. The definition of offenses and the classification of the offenders are legislative, and not judicial, functions; and where, as in the case at bar, a penal statute is plain and unambiguous in its terms, the courts may not lawfully extend it to a class of persons who are excluded from its effect by its words, because, in their opinion, the acts of the latter are as mischievous as those of the class whose deeds the statute denounces. It is the intention expressed in the statute, and that alone, to which the courts may give effect. They may not assume or presume purposes and intentions that the terms of the statute do not indicate, and then enact or expunge provisions to accomplish these supposed intentions. Construction and interpretation have no place or office where the language of a statute is unambiguous and its meaning evident. It must be held to mean what it plainly expresses, and no room is left for construction.

In U. S. v. Wiltberger, 5 Wheat. 76, 96, 5 L. Ed. 37, 42, Chief Justice Marshall said:

"The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially, in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle that a case, which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated."

See Field v. U. S. (C. C. A.) 137 Fed. 6, 8; Maxwell v. State, 40 Md. 293; Alexander v. Worthington, 5 Md. 472; Smith v. State, 66 Md. 215, 7 Atl. 49; Tynan v. Walker, 35 Cal. 634, 95 Am. Dec. 152; U. S. v. Clayton, Fed. Cas. No. 14,814; In re McDonough (D. C.) 49 Fed. 360; U. S. v. Lake (D. C.) 129 Fed. 499; Lake County v. Rollins, 130 U. S. 662, 670, 9 Sup. Ct. 651, 32 L. Ed. 1060; Swarts v. Siegel, 54 C. C. A. 399, 117 Fed. 13.

The plain language and evident meaning of section 9 creates and prescribes a punishment for no act which does not deprive the United States of some of its lawful duties. Moreover, if there is error in the view that the language of this statute is plain and its meaning certain, and it is open to construction, the application to it of the settled rules for the interpretation of statutes leads to no different conclusion. One of the established rules for the construction of statutes is that they should have a rational, sensible construction. U. S. v. Kirby, 7 Wall. 482, 486, 19 L. Ed. 278; Holy Trinity Church v. U. S., 143 U. S. 457, 460, 472, 12 Sup. Ct. 511, 36 L. Ed. 226; Tsoi Sim v. U. S., 54 C. C. A. 154, 160, 116 Fed. 920, 926. The act of June 10, 1890, is an act to facilitate the collection of the revenues of the United States. Section 9 is a highly penal statute. It prescribes the punishment of the forfeiture of the merchandise, a fine of a sum not exceeding $5,000, or imprisonment for a time not exceeding two years, or both, for every offense under it. It seems to be unreasonable and absurd to suppose that the Congress intended to prescribe this severe punishment for acts which were not intended to, and did not deprive the government of its duties or have any effect upon the subject or object of this legislation.

It is conceded by counsel for the government that the deprivation clause of the statute qualifies the offense by "any willful act or omission." It does not seem to be a sensible interpretation of the statute to hold that one who is guilty of a willful act or omission in the entry of his goods is exempt from the forfeiture, fines, and penalties prescribed by the section unless his act or omission deprives the government of its duties, while one who uses a false letter or statement in making his entry is liable to them although his act has no effect upon the revenue. The object which the legislative body sought to attain and the evil which it was endeavoring to remedy may always be considered for the purpose of ascertaining its intention. Brown v. Duchesne County, 60 U. S. 183, 194, 15 L. Ed. 595; Platt v. Union Pac. R. Co., 99 U. S. 48, 59, 25 L. Ed. 424; Durland v. U. S., 161 U. S. 306, 313, 16 Sup. Ct. 508, 40 L. Ed. 709. The act of Congress in which this section is found is not a code of moral laws enacted to command truth and punish falsehood. It is an act to aid in the collection of the revenues of the United States. The purpose which the Congress sought to accom-

plish was neither moral nor ethical, but economic and mercenary. The evil which it endeavored to remedy was not the commission of falsehood or perjury, but the deprivation of the United States of its lawful revenues. It is inconceivable that Congress could have intended in such an act to impose the drastic forfeitures, fines, and penalties which it prescribes for acts which deprived it of no revenue and did not affect the subject of the legislation, while it left willful acts or omissions free from punishment unless they had such an effect. The clear words of the statute, their certain meaning, the legal requirement that all the terms of the section which are consistent with each other shall be given effect, a consideration of the subject of the legislation, of the object which the Congress was seeking to attain and of the evil which it was endeavoring to remedy, point unerringly to the same result. And our conclusion is that none of the acts denounced by the section constitute an offense thereunder, unless they cause the United States to be deprived of some of the lawful duties upon imported merchandise.

The word "false" has two distinct and well-recognized meanings. It signifies (1) intentionally or knowingly or negligently untrue, and (2) untrue by mistake, accident, or honestly after the exercise of reasonable care. A statement that is false in the former sense is undoubtedly denounced by section 9. Is the use of a statement which is false in the latter sense equally a violation of the statute? The proposition argued by counsel for the government that evil intent is not always an indispensable element of statutory offenses is undoubtedly sound. Crimes may be created by statutes to the commission of which knowledge and intent are not, and to the commission of which knowledge and intent are, essential. The question here, however, is not whether an intention to defraud the United States of some of its duties is indispensable to the commission of the offense of using the false statement in making the entry of the goods. It is whether the word "false" in the statute means knowingly or negligently untrue or only innocently or erroneously untrue. Hence the facts that the corresponding section of the act of June 22, 1874, read that "any owner, importer, consignee, agent or other person who shall (with intent to defraud the revenue) make or attempt to make any entry," etc. (18 Stat. 188, c. 391, § 12), and that the words in parenthesis were omitted from the act of 1890, and the further fact that section 16 of the act of 1874 (18 Stat. 189), which required the court to submit to the jury as a distinct and separate proposition the question whether the alleged acts were done with an actual intention to defraud the United States, is not found in the act of 1890, upon which counsel for the government found a persuasive argument, are not controlling. They neither determine, nor point with any degree of certainty to the proper determination of the issue, whether the intention of Congress was to punish with forfeiture, fine, and imprisonment untrue statements innocently made through mistake or accident, after the exercise of reasonable care to learn and to tell the truth, or only those statements which are knowingly untrue or untrue through recklessness or the lack of ordinary care to ascertain and to state the truth. Let us turn our attention to this question.

In the case of U. S. v. 84 Boxes of Sugar, 7 Pet. 453, 461, 8 L. Ed. 745, 748, which was a proceeding to forfeit the sugars because they were entered as "brown" when they should have been denominated "white," the Supreme Court said:

"The statute under which these sugars were seized and condemned is a highly penal law, and should in conformity with the rule on the subject be construed strictly. If either through accident or mistake the sugars were entered by a different denomination from what their quality required, a forfeiture is not incurred."

Section 5209, Rev. St. [U. S. Comp. St. 1901, p. 3497], declares that:

"Every president, director, cashier, teller, clerk or agent of any such banking association who * * * makes any false entries in any book, report or statement to the association with the intent in either case to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association or any agent appointed to examine the affairs of any such association * * * shall be deemed guilty of a misdemeanor and punished accordingly."

But it is the unquestioned rule that a false entry by a president or other officer, with the intent to injure or defraud specified in the statute, does not constitute an offense under it, unless the entry was knowingly and intentionally made. A false entry, which the officer believed to be true when he made it, although it was in fact untrue, is not the false entry denounced by the law. Cochran & Sayre v. U. S., 157 U. S. 286, 293, 298, 15 Sup. Ct. 628, 39 L. Ed. 704; U. S. v. Allis (C. C.) 73 Fed. 165, 170; U. S. v. Graves (D. C.) 53 Fed. 634, 644; U. S. v. Allen (D. C.) 47 Fed. 696, 697; Dorsey v. U. S., 101 Fed. 746, 757, 41 C. C. A. 652, 663.

A statute of the state of New Hampshire provided that an attaching creditor might demand of a mortgagee, in certain cases, an account of the amount due on the debt secured by the mortgage, and that, if the mortgagee gave a false account, the mortgage should be discharged. The Supreme Court of that state held that an account which was untrue by mistake or accident and without culpable negligence of the mortgagee was not such a false account as would discharge the security under this statute. Putnam v. Osgood, 51 N. H. 192, 208.

A law of the state of Ohio imposed a penalty of 50 per cent. of the just tax upon the owner of property who made a "false return or statement." The Supreme Court of Ohio held that a return was not false within the true meaning of this statute, unless it was made with knowledge that it was untrue or through culpable negligence in ascertaining whether it was true or false. Ratterman, Treasurer, v. Ingalls, 48 Ohio St. 468, 489, 28 N. E. 168.

In Wood v. State, 48 Ga. 192, 297, 15 Am. Rep. 664, the highest judicial tribunal of that state in the discussion of the proper interpretation of this word in a penal statute said:

" 'False' means that which is not true, coupled with a lying intent."

Knowledge, intent, or a negligent disregard of the rights of others is indispensable even to that false representation which ordinarily avoids a contract. A mistaken representation that is not true, made after the use of reasonable care to ascertain whether it is true or false and in the belief that it is true, has no such effect. Union Pac. R. Co.

v. Barnes, 64 Fed. 80, 83, 12 C. C. A. 48, 50, 51; McDonald v. Trafton, 15 Me. 225, 227.

Many insurance policies contain a stipulation to the effect that any fraud or false swearing in the proofs of loss shall forfeit the claims under the policies. But the law is settled practically without dispute that it is only an untrue statement under oath which is knowingly or recklessly made that will constitute the false swearing which will forfeit the claim, and that a mistaken or an unintentional error in the sworn statement made without culpable negligence does not affect it. Wiede v. Ins. Co., Fed. Cas. No. 17,617; Ins. Cos. v. Weides, 81 U. S. 375, 383, 20 L. Ed. 894; Marion v. Great Republic Ins. Cos., 35 Mo. 148, 151; Franklin Ins. Co. v. Culver, 6 Ind. 136, 139, 140; Maher v. Hibernian Ins. Co., 67 N. Y. 283, 292.

It is conceded that there are many statutes and contracts in which the significance of the words "false" and "falsely" includes no element of knowledge, intent, or negligence, and that legislative bodies have adequate power to inflict penalties and forfeitures for acts that are false in this sense only. Commonwealth v. Weiss, 139 Pa. 247, 21 Atl. 10, 11 L. R. A. 530, 23 Am. St. Rep. 182; Commonwealth v. Raymond, 97 Mass. 567; 3 Greenleaf's Ev. § 21; Wharton's Criminal Law, § 88; Huntington v. Attrill, 118 N. Y. 365, 376, 377, 23 N. E. 544; Torbett v. Eaton, 49 Hun, 209, 212, 213, 1 N. Y. Supp. 614, 616. But before courts enforce penalties or forfeitures for such comparatively innocent acts the intention of the law makers to impose them should appear either by the express terms of the statutes or by reasonable implication. The reason of the case, the general rule that penal statutes should be strictly construed, that the judiciary should not interpret into them the creation of offenses which the enacting body did not clearly denounce, and the general current of decisions upon this subject, to some of which reference has been made, indicate that the true rule is this: The words "false" and "falsely," in statutes and contracts which impose forfeitures or penalties for false acts or acts falsely done, generally imply culpable negligence or wrong. They signify more than incorrect or incorrectly, and mean knowingly or intentionally or negligently false or falsely, in the absence of express provisions in the statutes or contracts themselves, or reasonable implications from them, their subjects, and the circumstances to the contrary. U. S. v. 84 Boxes of Sugar, 7 Pet. 453, 461, 8 L. Ed. 745; Cochran and Sayre v. U. S., 157 U. S. 286, 293, 298, 15 Sup. Ct. 628, 39 L. Ed. 704; U. S. v. Allis (C. C.) 73 Fed. 165, 170; U. S. v. Graves (D. C.) 53 Fed. 634, 644; U. S. v. Allen (D. C.) 47 Fed. 696, 697; Dorsey v. U. S., 101 Fed. 746, 757, 41 C. C. A. 652, 663; Putnam v. Osgood, 51 N. H. 192, 208; Ratterman v. Ingalls, 48 Ohio St. 468, 469, 28 N. E. 168; Wood v. State, 48 Ga. 192, 297, 15 Am. Rep. 664; Union Pac. R. Co. v. Barnes, 64 Fed. 80, 83, 12 C. C. A. 48, 50, 51; McDonald v. Trafton, 15 Me. 225, 227; Wiede v. Ins. Co., Fed. Cas. No. 17,617; Ins. Cos. v. Weides, 81 U. S. 375, 383, 20 L. Ed. 894; Marion v. Great Republic Ins. Co., 35 Mo. 148, 151; Franklin Ins. Co. v. Culver, 6 Ind. 136, 139, 140; Maher v. Hibernian Ins. Co., 67 N. Y. 283, 292; Hatcher v. Dunn, 102 Iowa, 411, 415, 71 N. W. 343, 344, 36

L. R. A. 689; State v. Smith, 63 Vt. 201, 22 Atl. 604; Masson v. Association, 18 U. C. C. P. 19.

Thus Abbott in his Law Dictionary (page 478) says:

"In the more important uses, in jurisprudence, of 'false' and 'falsely,' they usually import somewhat more than the vernacular sense of erroneous or untrue. They are oftenest used to characterize a wrongful or criminal act, such as involves an error or untruth intentionally and knowingly put forward. A thing is called false, when it is made or done with knowledge, actual or constructive, that it is untrue or illegal; or is said to be done falsely, when the meaning is that the party is in fault for its error."

A statute of Iowa made an inspector of illuminating oil civilly and criminally liable for falsely branding it. In a civil action under this law for damages, the Supreme Court of that state said:

"It is important to determine the meaning which should be attached to the word 'falsely' as used in the statute. Does it mean inaccurate, erroneous, or faulty merely, or does it include the thought of intentional wrong? It is true that a false branding may be said to be inaccurate, erroneous, faulty; but the word 'false' usually includes, not only the element of error, but also of intentional wrong. It is said in 7 Am. & Eng. Enc. Law, 661, that 'this word means something more than untrue. It means something designedly untrue, deceitful, and implies an intention to perpetrate some treachery or fraud.' * * * The statute under consideration makes the officer who violates its provisions liable both civilly and criminally upon precisely the same state of facts, and is therefore a penal statute to be strictly construed. Hanks v. Brown, 79 Iowa, 563, 44 N. W. 811, and cases therein cited; Sutherland, St. Const. §§ 208, 371. Statutes are sometimes enacted which prohibit acts, not because of any moral wrong involved in them, nor of any criminal intent with which they are committed, but from considerations of public policy; and persons are required to know the facts and obey the law, at the peril of punishment for disobedience, without regard to actual knowledge or wrongful intent. That is true of many fiscal, police, and other regulations. * * * But it is the general rule that a guilty intent is essential to the commission of a crime, and we are of the opinion that there is nothing in the language of the statute under consideration, even when construed with reference to the demands of public policy, which makes necessary the conclusion that an officer may, without intentional wrong or culpable negligence on his part, subject himself to penalties for which it provides."

Section 9 of the act of 1890 is a penal statute. It prescribes grave forfeitures and penalties, and it falls fairly within the rule which has been announced, and which is sustained by the above authorities. A rational construction of the statute and a consideration of the relation of the offense of the use of a false statement denounced in it to the other offenses created by it strengthen this conclusion. It is neither probable, nor reasonable, to suppose that Congress intended to inflict the forfeiture of the merchandise involved, a possible fine of $5,000, and possible imprisonment for two years for the use of an innocent or mistaken statement that was made with reasonable care and without knowledge that it was not true. The use of a false statement invokes the same punishment and is enumerated in the same section with the use of a "fradulent or false invoice, affidavit, letter, paper," and the guilt of a "willful act or omission." As the willful act or omission and the offense of the fradulent invoice, affidavit, letter, or paper could not be committed without knowledge or a reckless disregard of the means of knowledge, the reasonable inference is that Congress intended that knowledge of its falsity, or culpable negligence in ascertaining the

answer to the question, whether it was true or false, should be an indispensable element of the offense of using the false statement, under the familiar rule, "Noscitur a sociis."

Finally, section 5 of this act prescribes the forms of declarations for the entry of merchandise, and requires the owner, consignee, or agent to sign and file a statement in one of these forms according to the nature of the case. It is for a false statement in one of these declarations that this action is prosecuted. Section 6 of the act provides "that any person who shall knowingly make any false statement" in one of these declarations shall be punished by the same fine and imprisonment prescribed by section 9, and that nothing in that section shall relieve the goods of forfeiture. It is inconceivable that Congress intended to punish a knowingly false statement in the declaration by a possible fine of $5,000 and a possible imprisonment of two years by section 6, and to punish the same false statement when it was not knowingly, but innocently or ignorantly, made through mistake or accident by the same fine, the same imprisonment, and the additional penalty of a forfeiture of the merchandise involved under section 9. The conclusion is that the word "false" in section 9 of the act of June 10, 1890, means more than incorrect or erroneous. It implies wrong or culpable negligence, and signifies knowingly or negligently untrue.

Was the claimant the owner of the diamonds when he made his statement? He had the right to their possession, a lien upon them for the duties and the expenses of their transportation, which he had paid, and an option to keep them and pay the invoice price for them or to return them to the vendors; but he had not agreed to keep or to pay for them. He had not, therefore, completed his tentative purchase, and the general ownership of the property was in Fink, Bodenheimer & Co., and not in him. Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., 52 C. C. A. 25, 29, 114 Fed. 77, 81, 57 L. R. A. 696. But the act of June 10, 1890, opens with the enactment "that all merchandise imported into the United States shall for the purpose of this act be deemed and held to be the property of the person to whom the merchandise may be consigned," and this declaration has been followed by an adjudication that the consignee of imported goods is deemed the owner for the purpose of the collection of the customs, whatever his relation may be to other parties interested in them. U. S. v. Bishop, 125 Fed. 181, 185, 60 C. C. A. 123, 127.

Conceding, without deciding, that notwithstanding this statutory and judicial determination the entryman is required by section 5 to state who the owner of the imported merchandise is (U. S. v. Fawcett [C. C.] 86 Fed. 900), the fact that the term "owner" is not limited in its signification to one who holds a perfect title to property must not be overlooked. The word has other meanings, and must have its appropriate signification in each case in view of the subject, object, and terms of the legislation in which it is found. Thus, there may be many joint owners of the same property, yet each would undoubtedly be an owner. A bailor may have a general, and a bailee a special, ownership in the subject of the bailment. 2 Hale on Bailments, 56. In Camp v. Rogers, 44 Conn. 291, 298, a person who hired a carriage for a limited time was held to have

a special property in it, and to be the owner within the meaning of a statute which provided a remedy against one who "shall drive against another vehicle and injure its owner." In Baltimore & Ohio R. Co. v. Walker, 45 Ohio St. 577, 585, 16 N. E. 475, 480, it is said that:

"'To own' is defined 'to hold as property; to have a legal or rightful title to; to have; to possess'—and an 'owner' is 'one who owns; a rightful proprietor.' An owner is not necessarily one owning the fee simple or one having in the property the highest estate it will admit of. One having a lesser estate may be an owner, and, indeed, there may be different estates in the same property vested in different persons, and each be an owner thereof."

And the court held that under a statute which gave a remedy against the owner of a railroad for injuries resulting from a defect in the railroad locomotive or car the operating lessee was the owner for the time being.

In Choteau v. Thompson, 2 Ohio St. 114, and Dutro v. Wilson, 4 Ohio St. 101, the Supreme Court of that state decided, under a law which gave a mechanic's lien upon a building, and land upon which it was placed, to any one who furnished material or labor therefor under a contract with the owner, that the holder of the leasehold estate was such an owner. In Gilligan v. Board of Aldermen, 11 R. I. 258, it was held that a tenant for life, or from year to year, was an owner within the meaning of a law which gave compensation to abutting owners for damages caused by a change of grade in highways.

One of the accepted definitions of the term "owner" which has received the sanction of judicial tribunals is:

"He who has dominion of a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases, even to spoil or destroy, as far as the law permits, unless he be prevented by some agreement or covenant which restrains his right."

Bouvier's Law Dictionary, tit. "Owner"; Johnson v. Crookshanks, 21 Or. 339, 28 Pac. 78.

This definition comes very near to a description of the situation of the claimant when he made his declaration. He had the right of possession, and thus the dominion over the property. He had a lien upon it, the right to hold it until the amount of his lien was paid, and the ultimate right to appropriate it in due time to the payment of that lien. He had the right to purchase it at a fixed price, and hence, by exercising that right and paying the price, a right to destroy it. Conceding, however, that Fink, Bodenheimer & Co. still held the general ownership of the property, he had the special ownership and title of a bailee, and, in view of these facts and of the declaration of the statute that a consignee shall be deemed an owner, his statement that he was such was clearly free from any element of wrong or of culpable negligence; and, as there is no evidence that it deprived or was intended to deprive the government of any of its revenues, the use of it did not constitute an offense under the law. A construction of the act of June 10, 1890, that would subject a merchant who made an innocent error in the statement in his declaration of the title to imported merchandise to forfeiture, fine, and imprisonment, when his act neither deprived nor was calculated nor intended to deprive the United States of any of its customs or revenues,

would deflect the statute from its true purpose, create a new offense by judicial legislation after the fact, and be a reproach to the administration of justice.

The judgment below was right, and it is affirmed.